**UNITED STATES of America**

v.

**CITY OF HIGHWOOD, Defendant.**

**No. 88 C 4827.**

United States District Court,
N.D. Illinois, E.D.

April 26, 1989.

---

William T. Clabault, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., and Edward J. Snyder, Richard A. Correa and Donald J. Gavin, Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Timothy D. Johnson, Law Office of Paul P. Diambri, Highwood, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

A city ordinance of Highwood, Illinois, requires its residents to pay an annual tax or license fee ("fee") for motor vehicles they own and intend to operate on the streets of Highwood. To evidence payment, Highwood issues a sticker to be displayed on vehicle windshields. Any resident of Highwood who operates a vehicle without displaying the sticker is issued a citation by the Highwood police.

Located immediately adjacent to the City of Highwood is Fort Sheridan, a U.S. Army installation. Highwood enforces this ordinance against servicemen from Fort Sheridan who reside in Highwood, unless they are able to prove residence in a state other than Illinois and that they paid a similar tax or fee in that state. Any serviceman who registers his vehicle and obtains license plates in Illinois is assumed by Highwood to be a resident of Illinois and thus subject to its ordinance.

Fort Sheridan officials oppose the enforcement of Highwood's ordinance against nonresident servicemen stationed at Fort Sheridan and living temporarily in Highwood. They claim the fee required by the ordinance represents a tax prohibited by section 514 of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.App. § 574 (the "Act"). The Act essentially forbids a state or its subdivisions from imposing a tax on the income or personal property of nonresident servicemen.

In an effort to encourage Highwood to comply with the Act, Fort Sheridan has issued a modified Defense Department vehicle sticker to nonresident servicemen living in Highwood. These stickers are intended to provide a ready means by which the Highwood police can determine whether the vehicle is owned by a nonresident. However, notwithstanding the display of the Defense Department sticker, Highwood has continued to issue citations to vehicles it deems in violation of its ordinance.

At the request of the Army the government has brought this action seeking a declaratory judgment, and also preliminary and permanent injunctive relief prohibiting Highwood from enforcing its ordinance against nonresident servicemen stationed at Fort Sheridan and living temporarily in Highwood.

The government has moved for summary judgment, claiming the enforcement of Highwood's ordinance against nonresident servicemen violates the Civil Relief Act. Also before us is Highwood's motion to dismiss, contending that the controversy

herein has become moot because of the government's decision to close Fort Sheridan. For reasons hereinafter stated, the government's motion for summary judgment is granted, and defendant's motion to dismiss is denied.

## DISCUSSION

### I. Government's Summary Judgment Motion

#### A. *Purpose of the Civil Relief Act*

The Civil Relief Act of 1940, 50 U.S.C. App. § 574, is intended to relieve nonresident servicemen of the burden of supporting state and local governments if the servicemen's presence in the state is solely the result of military service. *California v. Buzard,* 382 U.S. 386, 393, 86 S.Ct. 478, 483, 15 L.Ed.2d 436 (1966). Section 514 subsection (1) of the Act provides that servicemen shall not lose their home state residences. 50 U.S.C.App. § 574. It further provides that "with respect to personal property, or the use thereof," property shall be deemed not "to have a situs for taxation" in the host state (the host state is the state where the serviceman is living pursuant to military orders). *Id.* Thus, subsection (1) forbids a state or its subdivisions from imposing taxes on a nonresident serviceman's personal property if the assessment would be based solely on the location of personal property.

The applicability of subsection (1) in this case is made clear by subsection (2). The latter provides that "personal property" shall include motor vehicles, and the "term 'taxation' shall include licenses, fees, or excises imposed in respect to motor vehicles or the use thereof: *Provided,* That the license, fee or excise required ... [by the serviceman's home state] has been paid" (emphasis in original).

The Act therefore protects servicemen against the *prospect* of double taxation presented by their temporary duty in a state other than their home residence or domicile. *Sullivan v. United States,* 395 U.S. 169, 180, 89 S.Ct. 1648, 1655, 23 L.Ed.2d 182 (1969). This protection has been liberally construed to exempt servicemen from taxes imposed by states where they do not reside. *See e.g., Le Maistre v. Leffers,* 333 U.S. 1, 6, 68 S.Ct. 371, 373, 92 L.Ed. 429 (1948) (Act "must be read with an eye friendly to those who dropped their affairs to answer their country's call"); *Boone v. Lightner,* 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L.Ed. 1587 (1943) (Act liberally construed "to protect those who have been obliged to drop their own affairs [and] take up the burdens of the nation").

#### B. *Scope of the Civil Relief Act*

The Supreme Court has set forth the criteria for applying the Civil Relief Act. *See, e.g., Sullivan, supra; Buzard, supra; Snapp v. Neal,* 382 U.S. 397, 86 S.Ct. 485, 15 L.Ed.2d 445 (1966); *Dameron v. Brodhead,* 345 U.S. 322, 73 S.Ct. 721, 97 L.Ed. 1041 (1953).

In *Dameron,* an Air Force officer stationed near Denver, Colorado, lived in an apartment in that city while maintaining his residency in Louisiana. Denver nonetheless assessed a tax on the officer's personal property. The officer paid the tax under protest and sued Denver to recover the payment. Denver argued that the officer was subject to its tax because he had not paid a similar tax in his home state and that the Civil Relief Act was designed only to prevent double taxation. The Court held, however, that servicemen were not required to pay a similar tax in their state of residence in order to be exempted from a tax by their host state. *Id.* at 326, 73 S.Ct. at 724 ("no suggestion that the state of original residence must have imposed a property tax.... Congress ... saved the sole right of taxation to the state of original residence whether or not that state exercised the right.") The Court thus gave the Act a broad reading which protected "servicemen from both income and property taxes imposed by any state by virtue of their presence there as a result of military orders." *Id.*

Thirteen years later, in *Buzard,* the Supreme Court expanded on *Dameron.* In *Buzard,* a serviceman who was a resident of Washington purchased and registered a car while stationed in Alabama. He was

subsequently transferred to California, where he refused to pay a 2% license fee which was required to obtain that state's license plates. The issue in *Buzard* was whether California's 2% tax—a condition for registering a car—was barred by the Civil Relief Act.

The *Buzard* Court held that nonresident servicemen were exempt from ordinary revenue-raising taxes but not from "those taxes which are essential to the functioning of the host State's licensing and registration laws in their application to the motor vehicles of nonresident servicemen." *Id.* 382 U.S. at 395, 86 S.Ct. at 484. The Court defined these nonexempted essential taxes as "licenses, fees or excises," and reasoned that "it would be inconsistent with the broad purposes of section 514 to read subsection (2)(b) as allowing the host State to impose taxes other than 'licenses, fees, or excises' when the 'license, fee, or excise' of the home state is not paid." *Id.* at 393, 86 S.Ct. at 483. *See also Snapp*, 382 U.S. at 398, 86 S.Ct. at 486 ("failure to pay the motor vehicle 'license, fee, or excise' of the home State entitles the host State only to exact motor vehicle taxes qualifying as 'licenses, fees, or excises'"). The 2% "license fee" was held to be a revenue-raising tax "no different in kind from taxes raised to defray the general expenses of government. It is from the burden of taxes serving such ends that nonresident servicemen were to be freed". *Id.* 382 U.S. at 395, 86 S.Ct. at 484.

Thus the Court recognized that license fees designed to raise revenue posed the same risk of double taxation as did ordinary personal property taxes. And, as a result, the Civil Relief Act exempted nonresident servicemen from paying such fees. However, "licenses, fees, or excises" essential to the administration or functioning of a state's licensing and registration laws were held not to be exempted.

Later, in *Sullivan*, the Supreme Court clarified the scope of the Act. In *Sullivan*, Connecticut imposed both a 3% tax on personal property purchased from in-state retailers and a use tax on personal property purchased from out-of-state retailers. Several servicemen stationed in Connecticut, but domiciled in other states, brought suit claiming the Act exempted them from paying the sales and use taxes.

The Court there held that because a sales or use tax was not a tax "in respect of" personal property, but rather a tax on a single transaction, such taxes were not exempted by the Act. *Id.* at 177, 89 S.Ct. at 1653. The Court found the congressional intent clear: the protection of the Act extended only to "annually recurring taxes *on* property ... [as opposed to taxes] imposed only once and then only when there [had] been a retail sales transaction." *Id.* at 176–77, 89 S.Ct. at 1652–53. The Court concluded that "Congress considered the occasional sales and use taxes that servicemen might have to pay an insignificant burden, as compared with annual ad valorem property taxes, and consequently not deserving of the same exemption." *Id.* at 179, 89 S.Ct. at 1654.

■ As a result of the aforementioned Court decisions, the Civil Relief Act clearly exempts nonresident servicemen from annual revenue-raising vehicle fees of a host state but not from "licenses, fees, or excises" essential to the functioning and administration of licensing and registration laws. *See also United States v. Commonwealth of Puerto Rico*, 478 F.2d 451, 456 (1st Cir.1973) ("licenses, fees, or excises imposed in respect to motor vehicles ... were given a narrow and restricted interpretation in *Buzard*. ... [they were] equated with 'the motor vehicle registration fee' and no more").

C. *Application of the Civil Relief Act to Highwood's Ordinance*

■ We find the fee charged by Highwood to be precisely the type of fee from which nonresident servicemen are exempt under the Act. Highwood's $15 annual license fee is increased to $30 for commercial vehicles with a load capacity of less than one ton, to $45 for commercial vehicles with a load capacity of one ton, and to $75 for commercial vehicles with a load capacity in excess of one ton. These provisions indicate the fee is not used to register

vehicles but rather to raise revenue for the maintenance of Highwood's streets—thoroughfares which would be more heavily damaged by heavy commercial vehicles than by light private vehicles.

This conclusion gains further support from *Village of Hodgkins v. Margarites*, 113 Ill.App.2d 140, 251 N.E.2d 774 (1st Dist.1969). The Illinois Appellate Court in *Margarites* examined a municipal vehicle license ordinance enacted pursuant to the same Illinois Municipal Code provision as Highwood's (Illinois Municipal Code, Section 8–11–4). The *Margarites* court described the "nature and purpose of a municipal vehicle license fee ... [as being] not really a license at all ... [but rather] a *revenue measure* designed to allow the costs of maintenance of the streets and highways of a municipality to be borne by those who derive the greatest benefit therefrom...." *Id.* 251 N.E.2d at 776 (emphasis added); *see also Buzard*, 382 U.S. at 395, 86 S.Ct. at 484; *United States v. Wyoming*, 402 F.Supp. 229, 231 (D.C.Wyo.1975) (annual county vehicle registration fee found to "raise revenue rather than merely cover the costs of administration of motor vehicle registration" and thus held not collectible from nonresident servicemen).

The nature of Highwood's fee is further evidenced by the fact that it is an annual fee rather than a one-time sales or use tax. *See United States v. County of Champaign, Ill.*, 525 F.2d 374 (7th Cir.1975). In *Champaign,* the government brought an action pursuant to the Civil Relief Act to enjoin Champaign County, Illinois, from taxing mobile homes owned by nonresident servicemen stationed at a nearly Air Force base. The statute in *Champaign* imposed an annual tax computed on a per square foot basis.

The Seventh Circuit found that collecting the tax from nonresident servicemen was a violation of the Act because it was an "annually recurring tax imposed on the ownership of property," as opposed to "sales or use taxes imposed on a particular transaction". *Id.* at 377; *see also Sullivan*, 395 U.S. at 182, 89 S.Ct. at 1656 (annual license

fees raise some risk of double taxation, as do property taxes and, thus, nonresident servicemen are exempted from such fees).

■ Thus Highwood's vehicle license fee is covered by the Civil Relief Act and cannot be enforced against nonresident servicemen living temporarily in Highwood. Nonetheless, Highwood argues in its response to the government's motion for summary judgment that the enforcement of its ordinance is in compliance with the Act because it adheres to the following guidelines: (1) it dismisses any citation issued to a nonresident serviceman who can prove that he paid a similar fee in his own state of residence (def.resp. to mo. for su. jdgmt. at 2); and (2) any serviceman who registers a vehicle in Illinois certifies he is a resident of Illinois and is thus subject to Highwood's ordinance (def.resp. at 5).

First, it is clear from *Dameron* and *Buzard* that a serviceman need not have paid a similar fee in his home state to be exempted from paying a fee in his host state. The only time prior payment is relevant is where the fee imposed is a "fee, license, or excise" essential to the functioning of the host state's licensing and registration laws. *Buzard*, 382 U.S. at 395, 86 S.Ct. at 484. If a fee is found to be a revenue raising fee, then nonresident servicemen are exempted from paying the fee regardless of whether any similar fee was paid in their home state. *Id.* (it is from the burden of paying taxes to generate governmental revenue that "nonresident servicemen were to be freed, in the main, *without regard* to whether their home States imposed or sought to collect such taxes from them") (emphasis added); *see also Puerto Rico*, 478 F.2d at 456 (if tax was not a " 'license, fee or excise,' ... [the court] need not consider what effect, if any, to give to a serviceman's compliance or noncompliance with the requirements of his home state").

Next, Highwood lacks support for its claim that a serviceman certifies he is a resident or domiciliary of Illinois when he registers his vehicle in Illinois.[1] A change

---

1. Highwood bases its argument on *Whiting v.*

*City of Portsmouth,* 202 Va. 609, 118 S.E.2d 505

in domicile is effected only if two elements are satisfied: (1) residing at a new place, and (2) intent to remain there. *See, e.g., State of Texas v. State of Florida*, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1939); *see also Beers v. North American Van Lines*, 836 F.2d 910, 913 (5th Cir.1988).

For servicemen, the rule is clear that "[a] serviceman is presumed not to acquire a new domicile when he is stationed in a place pursuant to orders; he retains the domicile he had at the time of entry into the service." Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3617 at 566 (1984); *see also Deckers v. Kenneth W. Rose, Inc.*, 592 F.Supp. 25, 27 (M.D.Fla.1984); *Codagnone v. Perrin*, 351 F.Supp. 1126, 1129 (D.R.I.1972). This presumption can be rebutted only with "clear and unequivocal" evidence. *Id.* at 1129.

The registration of a vehicle, by itself, is not "clear and unequivocal" evidence of an intent to change domicile. The government presents numerous affidavits of servicemen affected by Highwood's ordinance, demonstrating they have no intent to remain in Illinois after their release from active duty. These servicemen registered their vehicles in Illinois and a few even obtained an Illinois driver's license, but all state they have done so simply as a matter of convenience. Registering a vehicle and obtaining a driver's license are ties to be expected "wherever a serviceman is stationed ... [and are] insufficient to overcome the presumption that [the serviceman] intended to return to his [home] domicile." *Deckers*, 592 F.Supp. at 28.

Thus Highwood's enforcement of its license fee against nonresident servicemen merely because they registered their vehicles in Illinois or obtained an Illinois driver's license, is a violation of the Civil Relief Act.

We do not hold, however, that Highwood may never enforce its ordinance against servicemen stationed at Fort Sheridan and living in Highwood. If it is "clear and unequivocal" that the serviceman is a resi-

dent or domiciliary of Illinois, the license fee may be charged. We hold, however, that merely registering a car or obtaining a driver's license in Illinois is not sufficient proof of residency.

II. Defendant's Motion to Dismiss

Highwood contends that this action should be dismissed because of the government's decision to close down the base at Fort Sheridan. We disagree with that contention.

The base will necessarily be phased out over a period of years. Our ruling ensures that servicemen will be afforded the protections of the Civil Relief Act during the transition period. In addition, the closing of Fort Sheridan will not affect the more than 60 acres of land which will be retained for activities directly affecting the Army Reserve component units. With the closing of the main portion of the base, active duty personnel assigned to the reserve units will need to seek housing in nearby communities, including Highwood. The dispute at issue will therefore continue to be relevant for those personnel.

CONCLUSION

For the foregoing reasons, we grant plaintiff's motion for summary judgment and deny defendant's motion to dismiss.

(1961), which held that a serviceman who registered a vehicle in Virginia was deemed a resident of that state. However, five years after

*Whiting* the Court in *Buzard* expressly noted that its holding was contrary to *Whiting. See Buzard*, 382 U.S. at 393 n. 7, 86 S.Ct. at 483 n. 7.