(924 P.2d 1272)

No. 74,692
No. 74,694
No. 74,695
No. 74,696
No. 74,697

In the Matter of the Application of KARSTEN, CHRIS L. and LAURINE A., for Exemption from Ad Valorem Taxation in Riley County, Kansas.

Opinion filed October 4, 1996.

*Dan H. Myers*, of Myers, Pottroff & Ball, of Manhattan, for appellant Board of County Commissioners of Riley County.

No appearance by appellees.

Before GERNON, P.J., ROYSE, J., and WILLIAM F. LYLE, JR., District Judge, assigned.

LYLE, J.: This appeal, a consolidation of five tax appeals, was taken by the Riley County Board of County Commissioners after the district court affirmed the decisions of the Board of Tax Appeals (BOTA). BOTA found Chris L. and Laurine A. Karsten, *et al.*, (applicants) were exempt from payment of ad valorem property taxes on their automobiles under the Soldiers' and Sailors' Civil Relief Act of 1940.

All of the applicants are United States Army personnel or their spouses stationed at Fort Riley. In 1993, the applicants were assessed ad valorem taxes on the automobiles they maintained while living in Kansas. All filed requests for refunds and/or tax exemption applications, claiming they were exempt from the ad valorem taxes as active military personnel under the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. App. § 501 *et seq.* (1994).

BOTA issued nearly identical orders in all five cases, finding that the Soldiers' and Sailors' Civil Relief Act exempted the applicants from tax liability. BOTA determined that the applicants were residents of other states and were stationed at Fort Riley by reason of military orders. None of the applicants had lived in Kansas prior to being stationed at Fort Riley.

The County moved for reconsideration, and BOTA issued an order granting reconsideration in each case. Thereafter, BOTA issued more detailed orders setting forth the facts upon which it relied in determining that the applicants had not given up their domicile in other states. BOTA relied on *Woodroffe v. Village of Park Forest*, 107 F. Supp. 906 (N.D. Ill. 1952), in finding that the applicants' actions in registering to vote, even when the registration contained an oath of residence, was not sufficient to change domicile under the Soldiers' and Sailors' Civil Relief Act.

The County filed a petition for judicial review in Riley County District Court. Shortly thereafter, the County filed a motion for summary judgment in each case. On June 22, 1995, the district court denied the County's motion for summary judgment and issued orders affirming BOTA's decisions in each of the cases. The County filed a notice of appeal to this court.

The County essentially raises two issues on appeal. The first issue is whether the district court and BOTA properly interpreted the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C. App. § 574, and its interplay with state statutes. The second argument essentially challenges BOTA's factual determination that the applicants had not become Kansas residents or domiciliaries for purposes of the Soldiers' and Sailors' Civil Relief Act.

The first issue raised by the County questions the interpretation of state and federal statutes. Interpretation of a statute is a question

of law, and this court's review of such an issue is unlimited. See *In re Marriage of Quint*, 258 Kan. 666, 668, 907 P.2d 818 (1995).

The second issue raised by the County attacks a factual determination made by BOTA, *i.e.*, whether the applicants had left their prior domicile or residences and had become Kansas residents or domiciliaries. On appeal, the evidence must be viewed in the light most favorable to the prevailing party in determining whether there is substantial evidence to support the findings, and this court is precluded from reweighing the evidence. See *Sunflower Racing, Inc. v. Board of Wyandotte County Comm'rs*, 256 Kan. 426, 440-41, 885 P.2d 1233 (1994).

In finding that the applicants were exempt from ad valorem taxes, BOTA and the district court relied on the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. App. § 574, which provides in relevant part:

"(1) For the purposes of taxation in respect of any person, or of his personal property, income, or gross income, by any State . . . or political subdivision . . . *such person shall not be deemed to have lost a residence or domicile* in any State . . . *solely* by reason of being absent therefrom in compliance with military or naval orders, or *to have acquired a residence or domicile* in, or to have become resident in or a resident of, any other State . . . *while, and solely by reason of being, so absent*. For the purposes of taxation in respect of the personal property, income, or gross income of any such person by any State . . . or political subdivision . . . of which such person is not a resident or in which he is not domiciled . . . *personal property shall not be deemed to be located or present in or to have a situs for taxation in such State*. . . . Where the owner of personal property is absent from his residence or domicile solely by reason of compliance with military or naval orders, this section applies with respect to personal property, or the use thereof, within any tax jurisdiction other than such place of residence or domicile, regardless of where the owner may be serving in compliance with such orders. . . .

"(2) When used in this section, (a) the term 'personal property' shall include tangible and intangible property (including motor vehicles), and (b) the term 'taxation' shall include but not be limited to licenses, fees, or excises imposed in respect to motor vehicles or the use thereof, but only if a license, fee, or excise required by the State . . . of which the person is a resident or in which the person is domiciled has been paid." (Emphasis added.)

The County argues that under Kansas law, the applicants were Kansas residents. In making this argument, the County relies on

various Kansas statutes controlling motor vehicle registration and taxation. The Kansas tax code provides for the assessment of ad valorem taxes on motor vehicles. K.S.A. 79-5101 *et seq.* Taxes are levied upon "every motor vehicle, as the same is defined by K.S.A. 79-5101." K.S.A. 1995 Supp. 79-5105(a). For purposes of the ad valorem tax provisions, "motor vehicle" is defined as "all motor vehicles *required* to be registered under the provisions of article 1 of chapter 8 of the Kansas Statutes Annotated," unless otherwise excluded. (Emphasis added.) K.S.A. 1995 Supp. 79-5101.

Kansas law requires persons who own vehicles operated on Kansas roads to register those vehicles. That statute specifically requires an owner, "whether such owner is a resident of this state or another state," to "apply for and obtain registration in this state under the provisions of K.S.A. 8-126 to 8-149 . . . except as otherwise provided by law or by any interstate contract, agreement, arrangement or declaration made by the director of vehicles." K.S.A. 8-127(a). Kansas law, however, allows *nonresident* owners the privilege of operating their vehicles in Kansas "when duly licensed in the state of residence" to the extent reciprocal privileges are granted to residents in this state. K.S.A. 8-138a.

A "resident" for purposes of motor vehicle registration laws in Kansas is defined in K.S.A. 8-1,138. Under that statute, a "resident" is any person registered to vote in any county. K.S.A. 8-1,138(a)(1). The statute also creates a rebuttable presumption that a person is a resident if he or she owns, leases, or rents a domicile in Kansas or enrolls a student in a state school. K.S.A. 8-1,138(b)(1), (2).

The County contends that the assessment of ad valorem taxes in these cases was not based "solely" on the applicants being stationed in Kansas but on their actions which, under Kansas law, made them "residents" for tax purposes. In essence, the County is arguing that Kansas law is determinative of whether the applicants are "residents" of Kansas, thereby rendering the exemption under the Soldiers' and Sailors' Civil Relief Act inapplicable.

Under the Supremacy Clause of the United States Constitution, a state law which conflicts with a federal law or federal constitutional rights is unenforceable. The Supremacy Clause is applicable

in determining whether state law violates the tax exemption created by the Soldiers' and Sailors' Civil Relief Act. *United States v. State of Kan.*, 810 F.2d 935, 936-37 (10th Cir. 1987). State law impermissibly conflicts with a federal right "if the state law ' "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' *Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 97 S. Ct. 1305, 1310, 51 L. Ed. 2d 604 (1977) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 404, 85 L. Ed. 581 [1941])." 810 F.2d at 937.

Federal courts have recognized that the principal purpose of the provision of the Soldiers' and Sailors' Civil Relief Act was to "prevent the possibility of multiple state taxation of the income and property of [nonresident military] personnel." 810 F.2d at 937. Likewise, the Act must be interpreted " 'with an eye friendly to those who dropped their affairs to answer their country's call.' " *California v. Buzard*, 382 U.S. 386, 395, 15 L. Ed. 2d 436, 86 S. Ct. 478 (1966) (quoting *Le Maistre v. Leffers*, 333 U.S. 1, 6, 92 L. Ed. 429, 68 S. Ct. 371 [1948]).

The Soldiers' and Sailors' Civil Relief Act does not define "residence" or "domicile" and does not set forth any standards for determining where a serviceman's or servicewoman's residence or domicile exists under the Act. However, the exemption created by the Act is a creature of federal law, and it is inconsistent to look to state law to determine where such residence or domicile exists. This would subject military personnel to potentially inconsistent state laws for determining their eligibility for the ad valorem tax exemption depending upon where they are stationed.

The United States Supreme Court has rejected accepting state labels for determining whether a charge in connection with personal property fell within the scope of permissible "licenses, fees, or excises" under 50 U.S.C. App. § 574(2). *California v. Buzard*, 382 U.S. at 393; see also *United States v. Onslow County Bd. of Educ.*, 728 F.2d 628, 636 (4th Cir. 1984) (state label of "user fee" is not conclusive to determining whether nonresident tuition charges are permissible under the Soldiers' and Sailors' Civil Relief Act). Similarly, state standards for who is considered a "resident" under the motor vehicle registration and tax laws must be rejected.

We hold that the applicants' residency, for purposes of the Soldiers' and Sailors' Civil Relief Act, must be determined under federal principles and not state law.

The County next claims that BOTA's decision is erroneous because each of the applicants registered to vote in Kansas. In doing so, each applicant filed an application which contained a sworn statement that he or she was a Kansas resident and had abandoned any other residence. The County also points out that all of the applicants registered their cars in Kansas and several owned their homes in Riley County.

BOTA found that the act of registering to vote, even based upon a certification of residency on the voter's application, did not establish that the applicants had changed their residence to Kansas for purposes of the Soldiers' and Sailors' Civil Relief Act. BOTA relied on *Woodroffe v. Village Park Forest*, 107 F. Supp. 906.

In *Woodroffe*, the taxpayer was a Pennsylvania resident who was stationed by the United States Army in Chicago. Woodroffe rented a home in Park Forest, although military records indicated Pennsylvania was his home state and that he paid income taxes in his home state. While in Park Forest, Woodroffe voted in one school board election. The district court held that although state law required voters in school board elections to have a permanent residence within the school district, the court held that the evidence was that Woodroffe never abandoned Pennsylvania as his home state and that his affirmative act of voting, contrary to law, was not such to make him a resident.

The United States Supreme Court, in dicta, rejected a case based upon a similar argument. In *Buzard*, the Supreme Court rejected the decision of *Whiting v. City of Portsmouth*, 202 Va. 609, 118 S.E.2d 505 (1961), which held that a serviceman who registered a vehicle in Virginia was deemed a resident of that state. 382 U.S. at 393 n.7.

Likewise, such an argument was rejected in *U.S. v. City of Highwood*, 712 F. Supp. 138 (N.D. Ill. 1989). In *Highwood*, the city was located next to a United States Army installation. The city had an ordinance requiring its residents to pay an annual license "fee" for motor vehicles they operated on city streets. The United States

brought an action for declaratory judgment and injunctive relief prohibiting the city from enforcing its ordinance against nonresident military personnel stationed at the installation. In *Highwood*, the city attempted to uphold its tax by arguing that the servicemen and servicewomen had registered their vehicles in Illinois and, by doing so, certified that they were residents of the state. The federal district court rejected this argument, noting:

"A change in domicile is effected only if two elements are satisfied: (1) residing at a new place, and (2) intent to remain there. [Citations omitted.]

"For servicemen, the rule is clear that '[a] serviceman is presumed not to acquire a new domicile when he is stationed in a place pursuant to orders; he retains the domicile he had at the time of entry into the service.' Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3617 at 566 (1984)." 712 F. Supp. at 142-43.

Taking into account the presumption that military personnel retain their home domicile, there was substantial competent evidence to support BOTA's decision that none of the applicants were Kansas residents and that they were, therefore, exempt from ad valorem taxes. In each case, the applicants were from other states and never had resided in Kansas until they were stationed by the Army at Fort Riley. All maintained their home states in the military records. Several of the applicants established that they paid state income taxes on their military salary in their home states.

Clearly, there are facts upon which BOTA could have relied in determining that the applicants intended to change their residences. The applicants did register to vote in Riley County for the 1992 elections. With the exception of one applicant, the record established that the applicants registered to vote solely for purposes of voting in national elections. All of the applicants requested they be removed from the voter rolls when learning that it could affect their status under the Soldiers' and Sailors' Civil Relief Act.

Several of the applicants purchased homes in Riley County rather than renting. However, the fact that the applicants sought the financial benefit of purchasing a home for their tenure at Fort Riley is not absolutely indicative of intent to become permanent Kansas residents.

We hold there was substantial competent evidence to support BOTA's decision that the applicants did not intend to change their domicile to Kansas.

Finally, the County argues that regardless of their official "residency," these applicants lost their tax exempt status in Kansas by *voluntarily* registering their vehicles in Kansas. Thus, according to the County, the ad valorem tax being assessed against them by Riley County is not "solely" based upon their presence in Kansas or the situs of the property here.

In *Buzard*, 382 U.S. 386, the Court also recognized that a host state could require military personnel to register their motor vehicles in the host state *if* the vehicles were not registered in their home state; that registration requirement could include fees necessary to issue registration documents and license plates. However, the states could not impose a "license" fee on those vehicles which was nothing more than a disguised ad valorem tax. 382 U.S. at 393-94. In *Buzard*, California charged Buzard with a misdemeanor when he refused to pay a 2% annual "licensing fee" when he attempted to register his vehicle in California.

Kansas statutes recognize the *Buzard* ruling. A state statute specifically exempts "members of the armed forces who are stationed in the state" from state registration requirements "provided such members' vehicles are properly registered in such members' state of residence." K.S.A. 8-1,138(c)(2). Thus, Kansas law does not *require* bona fide nonresident military personnel stationed in Kansas to register their vehicles here unless they are not properly registered in their home states. For purposes of the ad valorem tax provisions, "motor vehicle" is defined as "all motor vehicles *required* to be registered under the provisions of article 1 of chapter 8 of the Kansas Statutes Annotated" unless otherwise excluded. (Emphasis added.) K.S.A. 1995 Supp. 79-5101.

Does the fact that bona fide nonresident military personnel "voluntarily" register motor vehicles in Kansas subject them to ad valorem taxes? This same argument was considered and rejected in *Highwood*, 712 F. Supp. at 143.

Clearly, the only reason the vehicles are registered here is because the military personnel are stationed here and their vehicles

are located here. Unless the evidence shows that the applicants have become Kansas residents, registering the vehicles here is nothing more than a matter of convenience. As bona fide residents of other states, the applicants face the possibility of ad valorem taxes in two states—Kansas and their home state—simply because they registered their vehicle where it was most convenient for them.

Based upon the broad interpretation given to the Soldiers' and Sailors' Civil Relief Act, imposing ad valorem taxes on the motor vehicles of bona fide nonresident military personnel stationed in Kansas simply because they registered their motor vehicles here is, de facto, a tax based solely on the presence of the military personnel and the situs of the vehicles here. As such, levying the ad valorem tax in these circumstances is contrary to the Soldiers' and Sailors' Civil Relief Act.

For all these reasons, the decisions of BOTA and the district court are hereby affirmed.