(168 P.3d 60)
No. 96,967

STATE OF KANSAS *ex rel*. PHILL KLINE, ATTORNEY GENERAL, *Appellant,* v. TRANSMASTERS TOWING and KEVIN RAASCH, *Appellees.*

Opinion filed October 5, 2007.

*John Christopher Pryor*, assistant attorney general, and *Bryan J. Brown*, deputy attorney general, for appellant.

*David W. Hauber* and *Nicholas J. Porto*, of Baty, Holm & Numrich, P.C., of Kansas City, Missouri, for appellees.

Before MALONE, P.J., BUSER and LEBEN, JJ.

BUSER, J.: The State of Kansas *ex rel.* Phill Kline (now Paul J. Morrison), Attorney General (State), appeals the dismissal of its claims under the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.*, against Transmasters Towing and its owner Kevin Raasch (Transmasters). The district court held the KCPA claims were preempted by the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. § 14501(c)(1) (2000). We affirm in part, reverse in part, and remand for further proceedings.

*Factual and Procedural Background*

In 2005, the State alleged that Transmasters committed multiple violations of the KCPA against 10 individual consumers. The State pled generally that Transmasters frequently obtained towing jobs under a "random assignment of government and Kansas turnpike authorities, by use of a rotation schedule" and that Transmasters had "towed vehicles in the State of Kansas without first obtaining the permission of those towed." The State then pled as to each individual consumer the circumstances requiring the tows, the acts alleged to be deceptive or unconscionable under the KCPA, and the facts indicating a lack of consent to the towings.

Among the acts alleged to have been deceptive or unconscionable were: charging excessive prices for towing and storage, raising prices after a customer's complaint, misrepresenting toll road pol-

icies, refusing to tow anywhere other than Transmasters' storage facility, and preventing access to personal belongings in stored vehicles. These acts were said to have violated K.S.A. 50-626(b)(9), K.S.A. 50-627(a), and K.S.A. 50-627(b)(1), (2), and (5). The State requested a declaratory judgment that Transmasters had violated the KCPA, injunctive relief, actual damages, and civil penalties.

Transmasters moved to dismiss, contending that "all claims brought by [the State] under the [KCPA] that are related to the [prices], routes, or services of a tow truck operator are specifically preempted by federal law." Transmasters did not identify any claims not related to its prices, routes, or services.

In 2006, the district court dismissed the State's claims, holding the "claims brought by [the State] . . . are specifically preempted by the federal Interstate Commerce Commission Termination Act (the 'ICCTA')," and that an "exception for state regulation of non-consensual tow [prices]" did not apply because "the KCPA sets no maximum price for nonconsensual tows and cannot otherwise be used to guide or police the price, route or service of [Transmasters]."

The State appeals.

*Are the Kansas Consumer Protection Act Claims Preempted By the Interstate Commerce Commission Termination Act?*

The question presented on appeal is whether the State's KCPA claims are preempted by the ICCTA. "This issue involves questions of statutory interpretation as well as preemption, both questions of law over which [an appellate] court exercises de novo review. [Citation omitted.]" *Doty v. Frontier Communications, Inc.*, 272 Kan. 880, 888, 36 P.3d 250 (2001).

Under the Supremacy Clause of the United States Constitution, "the Laws of the United States . . . shall be the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. A state law which conflicts with federal law is unenforceable. *In re Tax Appeal of Karsten*, 22 Kan. App. 2d 882, 886, 924 P.2d 1272 (1996). Because " '[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case," analysis of a federal statute "must be-

gin with its text," including the " 'structure and purpose of the statute as a whole.' " *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484-86, 135 L. Ed. 2d 700, 116 S. Ct. 2240 (1996) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 11 L. Ed. 2d 179, 84 S. Ct. 219 [1963], and *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 96, 98, 120 L. Ed. 2d 73, 112 S. Ct. 2374 [1992]).

The ICCTA contains an express preemption clause: "Except as provided in paragraphs (2) and (3), a State . . . may not enact or enforce a law . . . *related to a price*, route, or service of any motor carrier." (Emphasis added.) 49 U.S.C. § 14501(c)(1) (2000); see also *Doty*, 272 Kan. at 888-89 (reviewing types of preemption). An express preemption clause makes "the courts' task . . . an easy one." *English v. General Electric Co.*, 496 U.S. 72, 79, 110 L. Ed. 2d 65, 110 S. Ct. 2270 (1990). The plain language of the ICCTA's express preemption clause prohibits the State from bringing KCPA claims related to Transmasters' price, route, or service unless one of the statutory exceptions is applicable. On appeal, the State concedes this point.

The State contends, however, that one preemption exception is applicable: 49 U.S.C. § 14501(c)(2)(C) (2000), which provides in part:

"(2) MATTERS NOT COVERED.—Paragraph (1)—

"(C) does not apply to the authority of a State . . . to enact or enforce a law . . . *relating to the price* of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle." (Emphasis added.)

This price preemption exception was added to the ICCTA in 1995 "to allow States and local governments to regulate the price of tows in non-consent cases." H. Conf. R. No. 104-422, 104th Cong., 1st Sess., at 219 (1995), *reprinted in* 1995 U.S.C.C.A.N. 793, 904.

On appeal, Transmasters counters that the State did not raise the price preemption exception below, but the State clearly addressed this issue in its response to Transmasters' motion to dismiss. Nevertheless, because the State only raises the preemption exception relating to price, it tacitly concedes the ICCTA express preemption clause prohibits the State from bringing KCPA claims relating to Transmasters' route or service. See *McGinley v. Bank*

*of America, N.A.*, 279 Kan. 426, 444, 109 P.3d 1146 (2005) (issues not briefed are deemed abandoned). Accordingly, we affirm the district court's dismissal of the State's KCPA claims relating to Transmasters' route or service based upon the ICCTA's express preemption provision.

With regard to the price preemption exception, the district court declined to rule whether the State had pled a lack of "prior consent or authorization of the owner or operator," as required by the exception. 49 U.S.C. § 14501(c)(2)(C). The district court considered the "nonconsensual tow" issue to be moot, given its ruling that the KCPA is not a law "relating to the price of for-hire motor vehicle transportation by a tow truck" under 49 U.S.C. § 14501(c)(2)(C). Moreover, the parties have not briefed the nonconsensual tow issue. As a result, this issue is not appropriate for our review.

The question then becomes more narrowly focused: Are the KCPA's unconscionable acts or practices provisions a law "relating to" price?

In addressing this question, the parties brief only the "unconscionable acts or practices" provisions under K.S.A. 50-627(b). It is noteworthy that the KCPA does not define unconscionability. *State ex rel. Stovall v. DVM Enterprises, Inc.*, 275 Kan. 243, 249, 62 P.3d 653 (2003). Rather, it sets out a nonexclusive list of "circumstances" which the court "shall consider" when "determining whether an act or practice is unconscionable." K.S.A. 50-627(b). Some of these acts or practices deal directly with price, *e.g.*, K.S.A. 50-627(b)(2) ("the price grossly exceeded the price at which similar products or services were readily obtainable in similar transactions by similar consumers"), while others may relate to price depending on the circumstances. See, *e.g.*, K.S.A. 50-627(b)(5) ("the transaction the supplier induced the consumer to enter into was excessively onesided in favor of the supplier"). As a result, price unconscionability under the KCPA is determined on a case-by-case basis. See *Remco Enterprises, Inc. v. Houston*, 9 Kan. App. 2d 296, 302, 677 P.2d 567, *rev. denied* 235 Kan. 1042 (1984) ("In determining price unconscionability, there is no fixed ratio limit. The issue is to be determined by the court upon the basis of the peculiar circumstances of each case.").

The KCPA, adaptable to the circumstances of a particular case, is still a law "relating to the price" as that phrase is used in the price preemption exception of 49 U.S.C. § 14501(c)(2)(C). If it were not, we would conclude it is not "related to" price as that phrase is used in the express preemption clause of 49 U.S.C. § 14501(c)(1). Congress' use of cognates of the word, "relate," show it intended to grant an exception in 1995 as broad in scope (at least with reference to price) as the express preemption clause previously enacted in the ICCTA.

The State properly suggests this result is dictated by "rules of logic." The Ninth Circuit Court of Appeals has employed this logic: "[T]he regulation [for Washington state towing businesses] is not preempted under § 14501(c)(1) unless it relates to price. If the regulation relates to price, however, it is saved from preemption under the non-consensual towing exception of § 14501(c)(2)(C). Thus, either way . . . [the] regulation is not preempted." *Independent Towers, WA v. Washington*, 350 F.3d 925, 932 (9th Cir. 2003).

A contrary result is appropriate only if Congress expressed one intent by the phrase "related to" in the express preemption clause of 49 U.S.C. § 14501(c)(1), and a different intent by the phrase "relating to" in the price preemption exception found at 49 U.S.C. § 14501(c)(2)(C). This was the conclusion of law made by the district court in the present case.

With regard to the meaning of the words "related to" in the express preemption clause at 49 U.S.C. § 14501(c)(1), the district court correctly held this phrase is "broadly interpreted." Courts construing the ICCTA have relied on cases interpreting similar language in the Airline Deregulation Act of 1978 (ADA) and the Employee Retirement Income Security Act of 1974 (ERISA). See *Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765, 772-73 (2d Cir.), *cert. denied* 528 U.S. 868 (1999). Both the Second Circuit Court of Appeals in *Ace Auto Body & Towing*, 171 F.3d at 773, and the district court in the present case cited *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 119 L. Ed. 2d 157, 112 S. Ct. 2031 (1992), which construed the ADA in light of ERISA. The United States Supreme Court stated in *Morales*:

"For purposes of the present case, the key phrase, obviously, is 'relating to.' The ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' Black's Law Dictionary 1158 (5th ed. 1979)—and the words thus express a broad pre-emptive purpose. We have repeatedly recognized that in addressing the similarly worded pre-emptive provisions of . . . ERISA, 29 U.S.C. § 1144(a), which pre-empts all state laws 'insofar as they . . . relate to any employee benefit plan.' " 504 U.S. at 383.

This passage supports the district court's conclusion that the phrase "related to" in the express preemption clause at 49 U.S.C. § 14501(c)(1) should be broadly construed.

The Supreme Court's statutory interpretation in *Morales* also bolsters the proposition that the phrase "relating to" in the price preemption exception of 49 U.S.C. § 14501(c)(2)(C) should be construed broadly. The *Morales* Court effectively equated the words "related to" and "relating to," even though the phrases were found in different acts, *i.e.*, the ADA and ERISA. See 504 U.S. at 383-86. Similarly, we should not differentiate these phrases in the ICCTA, especially when they are found in the same statute.

It is true *Morales* construed "relating to" with regard to the breadth of preemption, not the breadth of an exception to preemption which is at issue here, but the principle is the same. *Morales* emphasized that "statutory intent" is based on " 'the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose. [Citations omitted.]' " 504 U.S. at 383. Nothing in the ordinary meaning of language suggests that cognates of "relate" have a broad meaning for purposes of preemption but a narrow meaning for purposes of an exception to preemption. Such a construction could only be based on a consideration other than the statutory language itself. In this regard, we note there is a general presumption *against* preemption of state law. See *Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 632, 154 P.3d 1080 (2007) (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 131 L. Ed. 2d 695, 115 S. Ct. 1671 [1995]).

Despite the equivalence of the phrases "related to" and "relating to," the district court based its narrow reading of the "relating to"

language found in the price preemption exception on a snippet of legislative history. The House Report of the Transportation and Infrastructure Committee stated that 49 U.S.C. § 14501(c)(2)(C)

"provides a new exemption from the preemption of State regulation of intrastate transportation relating to the price of non-consensual tow truck services. This is only intended to permit States . . . to set maximum prices for non-consensual tows, and is not intended to permit re-regulation of any other aspect of tow truck operations." H.R. Rep. No. 104-311, 104th Cong., 1st Sess., at 119 (1995), *reprinted in* 1995 U.S.C.C.A.N. 793, 831.

Relying exclusively on this brief passage, the district court held that the KCPA does not set "maximum price[s]," the phrase used by the House Committee, and thus it ruled: "[T]here is no applicable exception and [the State's] claims are preempted by the ICCTA." This legislative history, however, does not support the district court's conclusion because the House Conference Report later removed the House Committee's reference to "maximum" prices. H. Conf. R. No. 104-88 at 219. Moreover, Transmasters cites no case law in support of its assertion that the price preemption exception at 49 U.S.C. § 14501(c)(2)(C) applies only to maximum prices.

The intent of Congress is expressed through its statutory language. "It is never easy to use legislative history to decipher legislative intent because members of Congress may vote for a statute for varying reasons and may expect the courts to apply the statute in differing manners." *Perera v. Siegel Trading Co., Inc.*, 951 F.2d 780, 784 (7th Cir. 1992). The district court's restrictive interpretation of 49 U.S.C. § 14501(c)(2)(C) simply read "relating to" out of the statute. See also *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 226-28, 130 L. Ed. 2d 715, 115 S. Ct. 817 (1995) (holding a generally worded consumer protection act fell within ADA preemption).

If the KCPA unconscionability provision is expressly preempted because it relates to price under 49 U.S.C. § 14501(c)(1), it is also a law relating to price under the preemption exception established by 49 U.S.C. § 14501(c)(2)(C). We hold, under the facts of this case, that unconscionable price claims brought under K.S.A. 50-627 are not preempted by the express preemption clause of 49

U.S.C. § 14501(c)(1) prohibiting the enactment or enforcement of a law "related to a price, route or service of any motor carrier" because these claims are included within the preemption exception allowing the enactment or enforcement of a law "relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle" under 49 U.S.C. § 14501(c)(2)(C).

The district court's ruling to the contrary is reversed, the remaining rulings are affirmed, and the case is remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.