No. 74,724

STATE OF KANSAS, *Appellee*, v. LARRY HOLBROOK, *Appellant.*
932 P.2d 958

Opinion field January 31, 1997.

*Michael J. Helvey*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Jerome A. Gorman*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, C.J.: Larry Holbrook appeals his jury trial conviction of aggravated robbery (K.S.A. 21-3427 [Ensley 1988]), for which he was sentenced to a term of 15 years to life.

On April 13, 1992, at approximately 4:40 p.m., Michael Hillegas was delivering a package for his employer, United Parcel Service (UPS), at 7th and Parallel Avenue in Kansas City, Kansas. As Hillegas left his vehicle carrying the package, he was stopped by a young male (later identified as defendant Larry Holbrook) who first asked Hillegas for directions, then demanded money. Hillegas refused the demand. He testified the man then said, "Well, give me the mother fuckin' money or I'm gonna shoot you." At the time, the men were 2½ to 3 feet apart. The robber then reached across his own body with his right hand into the inside of his vest towards the left side of his waistband. The hand was wholly obscured from view. Hillegas then handed the robber approximately five $1 bills, a dollar in change, his gold-tone Timex watch, and a pair of black dress gloves. The robber walked away. Additional facts will be given as necessary for the discussion of particular issues.

For his first issue, defendant contends the trial court's elements instruction was erroneous.

We review jury instructions under the following standard:

" 'Jury instructions are to be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous.' [Citation omitted.]" *State v. Hunt*, 257 Kan. 388, 392, 894 P.2d 178 (1995).

Stated another way, " ' "[i]f jury instructions properly and fairly state the law as applied to the facts in the case when considered as a whole, and if the jury could not reasonably be misled by them, the instructions should be approved on appeal.' " [Citations omitted.]" *State v. Butler*, 257 Kan. 1043, 1065, 897 P.2d 1007 (1995).

" 'Errors that do not affirmatively cause prejudice to the substantial rights of a complaining party do not require reversal when substantial justice has been done.' " *State v. Johnson*, 255 Kan. 140, 148, 871 P.2d 1246 (1994) (quoting *State v. Peltier*, 249 Kan. 415,

426, 819 P.2d 628 [1991], *cert. denied* 505 U.S. 1207 [1992]); accord *State v. Cox*, 258 Kan. 557, 572, 908 P.2d 603 (1995).

As for the use of PIK instructions, we have said:

" 'The use of PIK instructions is not mandatory, but is strongly recommended. The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed. [Citation omitted.]' " *Butler*, 257 Kan. at 1066.

The fact that the trial court departed from the standard PIK instruction does not establish error. The question is whether the instruction misleads the jury or in some way prejudiced defendant's right to a fair trial. *State v. Harmon*, 254 Kan. 87, 93, 865 P.2d 1011 (1993).

Aggravated robbery is "a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." K.S.A. 21-3427 (Ensley 1988).

The elements instruction given is as follows:

"INSTRUCTION NO. 3

"The defendant is charged with the crime of aggravated robbery. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant intentionally took property from the person of Michael Hillegas;

"2. That the taking was by threat of bodily harm to Michael Hillegas;

"3. That the defendant was armed with a dangerous weapon and;

"4. That this act occurred on or about the 13th day of April, 1992 in Wyandotte County, Kansas.

"It is not necessary for the defendant to have exhibited the dangerous weapon to the victim. Whether or not the defendant is armed with a dangerous weapon is determined from the victim's point of view."

This is PIK Crim. 2d 56.31 (1992 Supp.) except for the final paragraph. It is this addition which defendant contends is erroneous. He argues that the modified PIK instruction misled the jury,

invaded the province of the jury, misstated the law, and allowed defendant to be convicted without the victim having a reasonable belief that defendant was armed with a dangerous weapon. We agree that the omission of the "reasonableness" requirement was error; however, we do not believe the jury could reasonably have been misled by this instruction and do not find that the error requires reversal.

Defendant denied he was the victim's assailant or was even present. The victim gave the only testimony as to what transpired. Thus, the following is the uncontroverted evidence of the occurrence. The victim, a UPS driver, was delivering a package at 7th and Parallel. When the robber first approached the victim and demanded money without stating or indicating he had a gun, the victim refused the request. Then the robber escalated the demand by (1) stating, "[G]ive me the . . . money or I'm gonna shoot you," and (2) reaching for an object hidden from view in his waistband.

The victim testified that the robber's hand and waistband were covered by a vest, and the victim demonstrated the robber's movement to the jury.

When the victim was questioned as to his thoughts immediately after the robber's gesture, he testified as follows:

"A. Well, my immediate thought was to go ahead and comply. That's part of UPS policy also is to comply with any robber, just go ahead and do what they tell you to.

"Q. Did you have any particular feelings or thoughts as to whether he actually had something that he could shoot you with?

"A. Well, I'm familiar with the neighborhood, I, you know, grew up there years ago, and I wasn't going to take any chances. I have better things to do than to die out on 7th Street and Parallel."

The robber threatened to shoot the victim, and the threat was accompanied by a menacing gesture obviously intended to make the victim believe he was reaching for the gun. This performance, whether in fact backed by the actual presence of a gun, was intended to make the victim part with his valuables out of fear of being shot. The robber's performance was, obviously, creditable as it caused the victim to change his position from his initial refusal

to compliance with the demand. It should also be noted the robber was 2½ to 3 feet away from the victim in an open area when the threat was made. There was nothing to interfere with the robber's ability to shoot the victim.

In *State v. Robertson*, 225 Kan. 572, 573, 592 P.2d 460 (1979), a robber put his hand in his coat pocket and pointed the pocket toward the store employee, acting as if there was a gun in the coat pocket. The robber then stated, "This is serious. It's a robbery. I want all your money." We held:

"It was not necessary for the State to show that the robber actually exhibited the weapon to the victim in order to raise a jury question. The only requirement was that there be some substantial evidence which raised a reasonable inference that the defendant was armed. As this court pointed out in *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), the aggravated robbery statute (K.S.A. 21-3427) requires only that the robber be 'armed with' a dangerous weapon, not that the robber openly display the weapon to the victim. Here the victim, Larry Williams, testified that the actions of the defendant in the store led him to believe that the defendant had a pistol or some other type of weapon. The conduct of the defendant, coupled with his statements at the time, constituted circumstantial evidence that the defendant was armed with a firearm." 225 Kan. at 574.

In *Robertson*, the robber made no verbal reference to having a gun.

In *State v. Colbert*, 244 Kan. 422, Syl. ¶ 3, 769 P.2d 1168 (1989), we held:

"Whether or not a robber is 'armed with a dangerous weapon' for aggravated robbery (K.S.A. 21-3427) purposes is determined from the victim's point of view. An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon. Hence, an unloaded gun or a gun with a defective firing mechanism may be a dangerous weapon within the purview of the aggravated robbery statute."

It should also be noted that in 1994, PIK Crim. 3d 56.31 was amended and now includes the following:

"[An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and which the victim reasonably believed to be a dangerous weapon.]"

The "Notes on Use" section following the instruction stated: "When there is an issue as to whether the defendant was 'armed

with a dangerous weapon' the bracketed definition may be used." PIK Crim. 3d 56.31 (1994 Supp.) (Notes on Use).

In 1995, this "Notes on Use" section was expanded and now reads:

"When there is an issue as to whether the defendant was 'armed with a dangerous weapon' the bracketed definition should be used. *State v. Colbert*, 244 Kan. 422, 769 P.2d 1168 (1989). In *Colbert*, the Court held in Syl. ¶ 3: 'Whether or not a robber is "armed with a dangerous weapon" for aggravated robbery purposes is determined from the victim's point of view (K.S.A. 21-3427). An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon. Hence, an unloaded gun or a gun with a defective firing mechanism may be a dangerous weapon within the purview of the aggravated robbery statute.' " PIK Crim. 3d 56.31 (1995 Supp.) (Notes on Use).

For convenience, the complained-of portion of Instruction 3 is iterated as follows:

"It is not necessary for the defendant to have exhibited the dangerous weapon to the victim. Whether or not the defendant is armed with a dangerous weapon is determined from the victim's point of view."

The reasonableness factor should have been included in the instruction. Where it is charged that an aggravated robbery was committed by threat of bodily harm to the victim while the robber was armed with a dangerous weapon, it is not necessary for the State to prove the robber actually exhibited the weapon to the victim. Whether the robber was armed with a dangerous weapon is to be determined from the victim's reasonable point of view. The robber's conduct and/or statements, if intended to convince the victim that the robber is so armed, along with a reasonable indication by the victim that he or she was so convinced, may be legally sufficient to satisfy this element. The trial court's instruction relative to this legal concept is to be considered together with the rest of the instructions. Under the uncontroverted facts herein, although the trial court erred in failing to include the reasonableness factor, we do not believe the jury could have been misled by the instructions and find no reversible error in its omission.

We note, also, that defense counsel advised the trial court that this was a correct statement of the law, although he objected to its inclusion in the instruction.

For his second issue, defendant contends the evidence was insufficient to support the jury's determination that the robber was armed with a dangerous weapon or that the victim believed the robber was so armed.

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Knighten*, 260 Kan. 47, Syl. ¶ 1, 917 P.2d 1324 (1996).

Our discussion and analysis in the previous issue is determinative of this issue. By word and gestures, the robber informed the victim he was armed with a gun and would shoot the victim if he did not turn over the demanded money. The threat was effective and caused the victim to change his original refusal to compliance because, in his words, he did not want to die there. We find no merit in this issue.

For his final issue, defendant contends the trial court erred in allowing the State to cross-examine defendant concerning a prior robbery conviction.

Defendant was arrested near the scene of the robbery about an hour after it occurred. There was considerable evidence that he was the robber. He admitted being in the area at the time of the robbery wearing clothing described by the victim as matching that of the robber. Defendant testified further, as follows:

"Q.  [By defense attorney, Mr. Lorton] Did you have a gun with you that day?
"A.  No. I ain't never—I ain't never owned a gun in my life. I ain't no violent person, I'm just trying to be successful with myself.
"Q.  Did you at any time on the April 13th of 1992, anytime during that day, have a gun with you?
"A.  No, sir, not in my possession.
"Q.  Do you own one?
"A.  I don't own one. I never had no gun. I never robbed nobody.
"Q.  You're saying you didn't tell this UPS driver that if you didn't—he didn't give you his money that you'd blow his head off?
"A.  I did not rob him. I did not say no violent language to the UPS driver, I did not—I never seen this man, that's why I'm curious myself, because I got something better in my life to do instead of get prosecuted, go down to the joint or whatever. I want to go to the joint for nobody else. I'm trying to defend myself, showing myself that I want something out of life. If I did it, I commit (sic) I did it, I commit (sic) I did it, but I know I didn't do it, that's what I'm saying."

At the conclusion of defendant's testimony on direct examination, the prosecution requested a bench conference wherein the following colloquy transpired:

"MR. GORMAN [Prosecutor]: Judge, out of an abundance of caution, I want to ask the Court about this first. The defendant made a statement that I wrote down, I tried to write down verbatim. He said, 'I ain't a violent person.' Based upon that statement, I'll ask the Court if in the Court's opinion the defendant opened up his door, opened up the door under 60-421 to ask him about his prior conviction for the crime of robbery from the State of Arkansas in 1985?

"THE COURT: Certainly seems like it to me.

"MR. LORTON: He wasn't asked a question about his demeanor, Your Honor.

"THE COURT: Well, I think he put his conduct and character into question. You asked him a good question, he gave you a lot more answer than he needed to. And I think he did, I think he opened the door to that cross-examination.

"MR. LORTON: Okay.

"THE COURT: Sure sounds like it to me.

"MR. LORTON: For the record, I want to object to that, of course, because I don't think that it's sufficient to open the door.

"THE COURT: You [can] certainly make a contemporaneous objection if you choose to.

"MR. LORTON: All right. Thank you, Judge."

The State then cross-examined defendant about the clothing and sunglasses taken from him when he was arrested, about the State's two witnesses who said they saw defendant wearing two watches, about the time frame of the crime and what defendant was doing during that time, and about the circumstances surrounding defendant's arrest. The cross-examination then concluded with the following questions and answers:

"Q.  [By Mr. Gorman] You made a statement, Mr. Holbrook, that I believe you said, 'I ain't a violent person,' remember saying that?

"A.  Yes, sir.

"Q.  Isn't it true that in October of 1985, you pled guilty to robbery in the State of Arkansas?

"A.  Yeah, 'cause they had me dead right."

There was no other testimony, and the evidentiary portion of the trial ended at this point without an objection being made.

In *State v. Cheeks*, 258 Kan. 581, 593, 908 P.2d 175 (1995), we stated:

"A party must make a timely and specific objection to the admission of evidence at trial in order to preserve the issue for appeal. K.S.A. 60-404 states that a verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection. See *State v. Peckham*, 255 Kan. 310, 327, 875 P.2d 257 (1994); *State v. Johnson*, 255 Kan. 252, 254, 874 P.2d 623 (1994). By failing to make a contemporaneous objection at trial, the defendant fail[s] to preserve this issue for appeal."

Clearly, there was no contemporaneous objection, and the issue was not preserved for appeal.

The judgment is affirmed.