No. 79,186

STATE OF KANSAS, *Appellee*, v. MICHAEL P. YARDLEY, *Appellant*.
(978 P.2d 886)

Opinion filed April 16, 1999.

*Joseph L. Dioszeghy*, of Overland Park, argued the cause and was on the brief for appellant.

*Paul J. Morrison*, district attorney, argued the cause, and *Steven J. Obermeier*, assistant district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: Michael P. Yardley appeals his convictions of first-degree felony murder, K.S.A. 21-3401(b), and aggravated robbery, K.S.A. 21-3427. Yardley was tried jointly with John Michael Manard, whose conviction was affirmed by this court this date. See *State v. Manard*, 267 Kan. 20, 978 P.2d 253 (1999).

Our jurisdiction is under K.S.A. 22-3601(b)(1) (a life sentence was imposed).

Yardley claims the district court erred by: (1) consolidating his trial with Manard's, (2) admitting evidence of false identification and items seized from his personal belongings, (3) submitting certain instructions to the jury, and (4) granting the State's motion for durational departure on the aggravated robbery sentence.

Finding no error, we affirm.

The facts surrounding the crimes involved are detailed in *State v. Manard*.

## DISCUSSION
### The Joint Trial

Yardley's first claim of error targets the joint trial. Yardley admits on appeal that his and Manard's defenses were not antagonistic. We have held that the decision to grant a severance lies within the sound discretion of the district court. We reverse only when a clear abuse of discretion is established. See *State v. Pham*, 234 Kan. 649, Syl. ¶ 4, 675 P.2d 848 (1984). A separate trial should be granted under K.S.A. 22-3204 when severance appears necessary to avoid prejudice and ensure a fair trial to each defendant. *State v. Aikins*, 261 Kan. 346, 360, 932 P.2d 408 (1997).

The contention here is that the admission of statements attributable to Manard by various witnesses were highly prejudicial to Yardley. Those statements concern: (1) stealing a car and going to Arizona; (2) needing a ride . . . in a death or death situation; (3) having a bad day; (4) "It was a souvenir"; (5) "Burn it" (referring to a t-shirt); (6) false statements to police regarding Manard's identity; (7) the redacted confession; and (8) the plan to steal or "jack" a car.

Yardley failed to make contemporaneous objections to statements (1), (2), (4), (5) and (6). A party must make a timely and specific objection to the admission of evidence at trial in order to preserve the issue for appeal. *State v. Holbrook*, 261 Kan. 635, 643, 932 P.2d 958 (1997).

Statements (1) through (5) qualify as vicarious admissions under K.S.A. 60-460(i)(2). Yardley was a party with the declarant (Manard) in a plan to commit a crime. All of the statements are relevant to the plan or its subject matter. They were spoken on the day of the crime and refer to the plan or the crime. The statements were made while the plan was in existence and before its complete execution. See *State v. Borserine*, 184 Kan. 405, 411, 337 P.2d 697 (1959).

### The Redacted Statement of a Codefendant

We next consider the admission of Manard's redacted statement. Yardley claims admission of the statement violated the rule of *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct.

1620 (1968). Specifically, Yardley argues the redaction identified Manard as the driver, thus implicating Yardley as the shooter because there was eyewitness testimony that the passenger was the shooter.

*Bruton* holds the admission of a defendant's confession implicating another codefendant at trial is prejudicial error when the codefendant has no opportunity to cross-examine the confessing defendant. 391 U.S. at 137. We followed *Bruton* in *State v. Rodriquez*, 226 Kan. 558, 601 P.2d 686 (1979).

The redaction order fully protected Yardley's confrontation rights as directed by *Bruton*. The district court ordered: (1) there could be no reference to Yardley's name; (2) the statement "Yardley shot the dude" was off limits; and (3) no mention could be made that Manard stated someone else was with him during the crime.

The district court also gave a limiting instruction, informing the jury it could only consider the statement as to Manard, the codefendant. Yardley exploited the redaction order to his advantage. He called Officer Vargo as a defense witness and asked about Vargo's conversation with Manard. Yardley referenced, in closing argument, Manard's statement that Manard saw blood to imply that Manard was the shooter, because only the shooter would have seen blood. Yardley's argument that the redaction was prejudicial is not persuasive.

## The "Jack" a Car Comment

Yardley also takes issue with Manard's comment to "jack" a car. Yardley contends it was unclear who made the statement. The record refutes Yardley's contention. Manard and Yardley discussed stealing a car with two friends before the shooting. One of those friends was Darren Stevens. The record shows that the car-jack comment was specifically attributed to Yardley by Stevens. The comment was also admissible as a vicarious admission. K.S.A. 60-460(i)(2).

The district court did not abuse its discretion by refusing to sever the trials of Yardley and Manard.

Additional Evidentiary Issues

Yardley claims error in the admission of evidence of false identification. Yardley, Manard, and two friends, all riding in the cab of a pick up, were stopped by the Gardner police about a week after the crime. Manard identified himself as Mike Schillinger, and told the officer that he was often confused with his brother, John Manard. None of the occupants of the pickup produced identification. A female identified herself as Renee Gedry. The officer knew her name was Pamela Wade. Yardley identified himself as John Hume. The owner of the vehicle correctly identified himself as John House.

Manard, not Yardley, moved to suppress the evidence gathered during the traffic stop. The district court conducted a hearing on the motion, ruling the stop and detention lawful. The statements and evidence recovered were admissible. Yardley failed to object to the statements when admitted at trial. The transcript of the hearing on Manard's motion shows Yardley's counsel did not participate in the hearing. Issues not raised before the trial court cannot be raised on appeal. *State v. Alderson,* 260 Kan. 445, Syl. ¶ 7, 922 P.2d 435 (1996). The false identification issue is not properly before us.

The district court admitted evidence seized from a duffle bag at John House's residence. Yardley argues the evidence from his duffle bag was erroneously admitted because (1) the search warrant was not specific as to the items to be searched; and (2) his consent to search the residence was required because he was a tenant. Our standard of review regarding the admission or exclusion of evidence is abuse of discretion. *State v. Baacke,* 261 Kan. 422, 427, 932 P.2d 396 (1997).

After arresting Yardley, the police obtained a search warrant for John House's residence and sought to execute that warrant. House consented to the search. The police recovered .45 caliber ammunition from Yardley's duffle bag. Yardley did not file a motion in limine but objected during trial to the admission of this evidence.

Yardley maintains he was a rent-paying tenant. We find no citation to the record where such a statement can be found. House

did testify that Yardley moved into his trailer the day before the traffic stop, but there is nothing in House's testimony suggesting a landlord-tenant relationship.

The State admits overnight guests have expectations of privacy in a host's home. See *Minnesota v. Olson*, 495 U.S. 91, 109 L. Ed. 2d 85, 110 S. Ct. 1684 (1990). Thus, the State does not take issue with Yardley's standing to object to the seizure. The State maintains the search was lawful under the warrant, as the officers did not rely on House's consent. The search warrant does not appear in the record on appeal. Testimony reflects that the warrant stated the search was of the "trailer and the contents thereof." The district court ruled the search of the duffle bag was covered under the warrant. We agree. "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982). The district court did not abuse its discretion in admitting the ammunition seized from Yardley's duffle bag.

## Jury Instructions

The district court used the Pattern Instructions for Kansas (PIK) Crim. 3d 54.05 in formulating the jury instruction on aiding and abetting at issue here. We approved instruction 54.05 in *State v. Minor*, 229 Kan. 86, 89, 622 P.2d 998 (1981). Yardley suggests the instruction was inappropriate because he was not charged in the complaint as an aider and abettor. According to Yardley, the evidence as developed showed he was either the shooter or not present. Yardley argues instruction 54.05 "allowed the jury to expand the scope of their reasoning, and to speculate as to his role, which was inconsistent with the charges brought against him." We disagree. The jury could have concluded from the evidence and Yardley's own arguments that he was an aider and abettor as the driver of the vehicle. Testimony showed Yardley and Manard were together on the day of the crime and during the hours of the crime. Furthermore, Yardley argued during closing that Manard was the shooter because Manard saw blood. Thus, the jury could have con-

cluded that Yardley was with Manard, but Yardley was not the shooter. The district court did not abuse its discretion in giving the aiding and abetting instruction. See *State v. Brinkley*, 256 Kan. 808, 822-23, 888 P.2d 819 (1995) (aiding and abetting instruction not error if there is sufficient evidence to support the instruction, even though the only evidence supporting the aiding and abetting theory is circumstantial).

Yardley next argues that PIK Crim. 3d 51.10 should not have been given. Instruction No. 6, based on PIK Crim. 3d 51.10 said: "Your only concern in this case is determining whether the defendant is guilty or not guilty. The disposition of the case thereafter is a matter for determination by the Court." Yardley reasons that the ultimate disposition in his case was a concern for the jury. Yardley's argument lacks merit. We approved instruction 51.10 in *State v. Osburn*, 211 Kan. 248, 254, 505 P.2d 742 (1973) when the words "guilt or innocence" were in the instruction. As a rule, juries should not consider the ultimate disposition of the case. *State v. Alexander*, 240 Kan. 273, 286-87, 729 P.2d 1126 (1986).

Yardley also contends PIK Crim. 3d 54.01-A, instead of PIK Crim. 3d 54.01 should have been given. Instruction 54.01 "Presumption of Intent" provides:

"Ordinarily a person intends all of the usual consequences of his voluntary acts. This inference may be considered by you along with all other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

### Instruction 54.01-A "General Criminal Intent"provides:

"In order for the defendant to be guilty of the crime charged, the State must prove that (his) (her) conduct was intentional. Intentional means willful and purposeful and not accidental.

"Intent or lack of intent is to be determined or inferred from all of the evidence in the case."

Instruction 54.01 is consistent with the principles of felony murder. The instruction was proper. Instruction 54.01-A should be used only where the crime requires a general criminal intent and the state of mind of the defendant is a substantial issue in the case.

The instruction is not intended for general use. PIK Crim. 3d 54.01-A (Notes on Use).

Failure to give a defendant's requested instruction is not error where the substance of the instruction is in the other instructions given. *State v. Cheeks*, 253 Kan. 93, 853 P.2d 655 (1993). The district court declined to give instruction 54.01-A because the requisite elements of intent were sufficiently set forth in the charging instructions and in the aiding and abetting instruction. The jury was instructed that: (1) the State had the burden to prove the defendant was guilty and the defendant was not required to prove he was not guilty (PIK Crim. 3d 52.02); (2) a person who intentionally aids or abets another to commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed (PIK Crim. 3d 54.05); (3) to prove aggravated robbery it had to find that the defendant intentionally took property from the presence of Donald England by threat of bodily harm or force (PIK Crim. 3d 56.31).

When reviewing challenges to jury instructions, the instructions are to be considered together and read as a whole. *State v. Nash*, 261 Kan. 340, 342, 932 P.2d 442 (1997). Read as a whole, the jury was sufficiently instructed on the requisite intent of the crimes charged. There was no reason for the district court to give the proposed instruction 54.01-A.

### Sentencing—The Durational Departure

The State moved for an upward durational departure on the aggravated robbery count. The district court granted the durational departure, reasoning Yardley: (1) had failed rehabilitative and probationary services; (2) was on escape status at the time of the crimes; (3) continued threatening behavior that made him a danger to society; and (4) committed crimes that were vicious, unprovoked, and totally random. Yardley asserts error, contending there is no statutory basis or case law to support the factors relied upon by the district court. Yardley is mistaken.

Under K.S.A. 21-4721(d), a sentencing court's findings of fact and reasons justifying a departure must be: (1) supported by the evidence and (2) constitute substantial and compelling reasons for

departure. Our review is limited to the weakest type of review, abuse of discretion. See *State v. Favela*, 259 Kan. 215, Syl. ¶ 9, 911 P.2d 792 (1996).

The fact that a defendant has failed on probation in prior cases may be a substantial and compelling reason for departure. *State v. Rhoads*, 20 Kan. App. 2d 790, 800, 892 P.2d 918 (1995). See also *State v. Trimble*, 21 Kan. App. 2d 32, 38, 894 P.2d 920 (1995) (additional crimes committed while on parole can be a substantial and compelling reason for departure). Yardley was on escape status from community corrections. The inference to be drawn from his escape status is that he was not amenable to rehabilitative services and is a danger to the community.

The district court found Yardley's threatening behavior made him a threat to society. The judge noted Yardley's "contempt for the system and institutions that are the foundation of society." According to the district judge, Yardley repeatedly used obscenities in the courtroom, including yelling obscenities at the jurors after the verdict. Yardley also made obscene gestures at witnesses and spit on a sheriff's deputy and his codefendant's attorney during trial. Evidently, Yardley's conduct was so out of control he was masked at the sentencing hearing. His mask was removed so that he could speak only after his lawyer promised good behavior. The record supports the district court's finding. Future dangerousness may constitute a factor for an upward departure. *State v. Hawes*, 22 Kan. App. 2d 837, 840, 923 P.2d 1064 (1996). A defendant's random shooting of the victim may also be considered as an aggravating factor to justify a departure sentence. *State v. Alderson*, 260 Kan. 445, Syl. ¶ 13, 922 P.2d 435 (1996).

There is no abuse of discretion here.

Affirmed.