(32 P.3d 717)

No. 85,937

STATE OF KANSAS, *Appellee*, v. JAMES WREN, JR., *Appellant*.

Opinion filed October 12, 2001.

*Autumn L. Fox*, of Abilene, for appellant.

*Terri L. Johnson*, assistant county attorney, *John Swarts III*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before ELLIOTT, P.J., BEIER, J., and PADDOCK, S.J.

BEIER, J.: Defendant-appellant James Wren, Jr., appeals his convictions on two counts of aggravated robbery, arguing that the evidence was insufficient to support the convictions and that the trial judge erred in failing to supply the jury a copy of his instructions for 2 hours.

A brief review of the facts is necessary to an understanding of our holding on the sufficiency of the evidence.

In the first incident leading to Wren's convictions, a young 5'9" to 6'2" white man with a medium build and severe acne came into a video store in Fort Scott and inquired about when the store would close. About half an hour later, a man dressed in a "Scream" costume came into the store and demanded money from the cashier. The man had a blue glove over his left hand and had a plastic bag with what appeared to be a gun in his right hand. Witnesses described the man as 6'2" tall and black, based on his voice and demeanor. Witnesses also noticed a tear in the costume revealing a red shirt or sweater underneath.

In the second incident leading to Wren's convictions, approximately 2 weeks later, a young 6'2" black man entered a grocery store in Fort Scott and requested a job application. The man was wearing red pants and a hose stocking hat. About 9:30 p.m. the store's employees were preparing to close when a young white man with severe acne came in and requested a price check on some groceries for his grandmother. During this time, a man in a "Scream" costume and holding what appeared be a gun entered the store and asked for money. The cash registers were emptied into grocery bags, which were given to him. Witnesses identified the man in the costume as the same young black man who had been in the store earlier to request an application for employment. They also noticed he was wearing red underneath the costume. One witness recognized the costumed man's voice and said his name was James. This witness had known James for 2 years and said James had asked for a cigarette earlier in the evening of the same day.

Police discovered that James lived in a nearby boys' home and that someone at the home could provide his last name. They were then able to identify the young white man as Jacob York and the young black man as James Wren.

The police went to York's aunt's home, believing they could find him there, and obtained permission to search the house. They found York and a large amount of cash hidden under a bed. This visit also yielded an address at which police could find Wren. When

police searched at that address, they found Wren hiding underneath a blanket, $16 in cash, a "Scream" costume torn as witnesses at both stores had described, and red pants. Moreover, a resident at this address said that Wren had returned about 11 p.m. on the evening of the second robbery and that he was carrying a grocery bag with a dark item she believed to be the costume.

During Wren's trial, the district judge read the instructions aloud to the jury. He did not give the jury a copy of the written instructions until deliberations had been under way approximately 2 hours. When the trial court inquired if the delay in receiving the written instructions caused any difficulty with deliberations, the presiding juror replied, "No."

### Sufficiency of the Evidence

Wren argues there was insufficient evidence to find him guilty of the aggravated robberies because no eyewitness positively identified him and there was nothing to support a finding that a gun was used in the robberies.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

Aggravated robbery is the taking of property from the person or presence of another by force or by threat of bodily harm to any person, committed by one armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery. K.S.A. 21-3426; K.S.A. 21-3427.

" 'Whether or not a robber is "armed with a dangerous weapon" for aggravated robbery (K.S.A. 21-3427) purposes is determined from the victim's point of view. An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon.' " *State v. Holbrook*, 261 Kan. 635, 639, 932 P.2d 958 (1997) (quoting *State v. Colbert*, 244 Kan. 422, Syl. ¶ 3, 769 P.2d 1168 [1989]).

We are confident a rational factfinder could have found Wren guilty beyond a reasonable doubt. Both the testimony and the physical evidence supported the convictions.

York, Wren's codefendant, testified that Wren was present at both the video store and the grocery store. One witness identified Wren as the person in the costume at the grocery store, and the other witnesses described the robber as a young black man similar in height to Wren. In addition, witnesses from both stores consistently testified they were fearful they might be hurt by what they believed was a gun, and the police found the torn "Scream" costume and red pants at Wren's residence. A witness at Wren's residence said Wren had returned home carrying a grocery bag and a dark item like the costume at a time consistent with his presence during the grocery store robbery.

Wren's jury was charged with evaluating of all of this testimony and physical evidence, as well as witness credibility. It is not our place to repeat this task. See *State v. Saiz*, 269 Kan. 657, 664, 7 P.3d 1214 (2000).

### Delivery of Written Jury Instructions

Wren next argues the district judge erred in allowing the jury to deliberate for more than 2 hours without written instructions, although the judge had read the instructions aloud to the jury before deliberations began.

K.S.A. 2000 Supp. 22-3414(3) requires the trial judge to instruct the jury on the applicable law at the close of the evidence. It does not require that the instructions be provided to the jury in writing.

In *State v. Norris*, 10 Kan. App. 2d 397, 699 P.2d 585 (1985), the appellant complained of the opposite omission. The trial judge had supplied the jury with a copy of the written instructions as jurors began deliberations but had not read the instructions aloud. We held the judge's decision to forgo oral delivery of the instructions erroneous and prejudicial.

"Historically, instructions to the jury were delivered orally and somewhat extemporaneously. In order to facilitate review of the law stated by the court and to permit the parties to have the opportunity to review and suggest changes in the proposed instructions, statutes were passed requiring judges to reduce their instructions to writing before reading them to the jury. [Citations omitted.] The written instructions could then be given to the jury for reference during deliberations at the discretion of the judge. [Citation omitted.]" 10 Kan. App. 2d at 399-400.

*Norris* does not require reversal of Wren's convictions. Although we approve of the practice of trial judges giving juries copies of the written instructions as a supplement to reading the instructions aloud, such a practice is not required by statute or under our previous case law. Oral reading of the instructions—with its attendant guarantee that all jurors are exposed to exactly the same words as well as any arguable inflection and emphasis—safeguards a defendant's rights better and more completely than any distribution of a copy of the written instructions could.

Affirmed.