(172 P.3d 1213)
No. 95,487

STATE OF KANSAS, *Appellee,* v. CARL MACK GREEN, *Appellant.*

Opinion filed December 14, 2007.

*Carl Folsom, III,* of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier,* assistant district attorney, *Phill Kline,* district attorney, and *Paul J. Morrison,* attorney general.

Before RULON, C.J., ELLIOTT and HILL, JJ.

HILL, J: Carl Mack Green was convicted of three counts of identity theft. Since he used only one person's identity, Green now contends we must overturn two of his convictions because he is being punished three times for the same crime. Because Green used the stolen identity at three different retailers over a 2-day period, we hold his convictions are proper.

Green also appeals his departure sentence, contending the aggravating factors determined by his jury were not compelling and not found in the sentencing statute. Finally, he thinks the jury, not the judge, should have decided his criminal history. Because controlling case law and statutes show Green is wrong, we hold his departure sentence is proper. We affirm.

First we look at the issues raised about the identity theft convictions. Next we list the elements of the crime of identity theft to provide a means to evaluate Green's acts. Following the review of the facts, we address the double jeopardy—multiple conviction argument Green brings. Finally, our review of the applicable statutes and cases shows why Green's sentence is proper.

*There are many ways to commit identity theft under our statute.*

Since the alleged crimes occurred in 2004, Green's identity theft charges are defined by K.S.A. 2004 Supp. 21-4018(a). (The 2005 revisions to the statute do not apply here; *c.f.*, K.S.A. 2005 Supp. 21-4018.) Identity theft is "knowingly and with intent to defraud for economic benefit, obtaining, possessing, transferring, using or attempting to obtain, possess, transfer or use, one or more identification documents or personal identification number of another person other than that issued lawfully for the use of the possessor." K.S.A. 2004 Supp. 21-4018(a). Four verbs make up the backbone of the crime: obtaining, possessing, transferring, and using. Those four actions and any attempt to do them comprise the crime of identity theft.

Said in another way, if, in Kansas, a defendant knowingly and with the intent to defraud, uses identity documents with another's identity, for some economic benefit, that defendant has committed the crime of identity theft. See PIK Crim 3d 62.13. (Economic benefit was changed to any benefit in 2005; L. 2005, ch. 131, sec. 2).

*The case history reveals how Green used someone else's identity.*

Carl Mack Green received from an associate another man's driver's license number, social security number, birth date, address, bank statements, a credit report printout, and other documents on July 20, 2004. The other man was Alan Kane. Green intended to use the information to buy high-value goods and then sell them for a profit to a prearranged buyer. Using Kane's name and personal information, Green secured a driver's license bearing Kane's name but displaying Green's picture. Equipped with these documents, Green sought access to credit at three retail establishments.

The next day, Green opened credit accounts in Kane's name first at a Home Depot store in Missouri and then at a JCPenney store in Merriam, Kansas. He also filled out a credit card application for Wal-Mart using Kane's name. Shopping day came a day later, on July 22, 2004. Green bought almost $1000 worth of goods at the JCPenney store. On the same day, at the Merriam Home Depot,

using the credit account in Kane's name he had set up the day before, Green tried to buy about $5,500 in goods but was arrested before completing the transaction.

Green was charged with one count of identity theft when he used Kane's identity to open the JCPenney credit account. He was also charged with one count of identity theft for attempting to use the credit account already opened in Kane's name at the Home Depot. The third charge of identity theft arose from filling out the Wal-Mart credit account again using Kane's name. Green was also charged with one count of criminal use of a financial card of another, one count of theft (misdemeanor), and one count of unlawful use of a driver's license. Kane testified he never gave anyone permission to use his identity. The jury convicted Green on all counts. This appeal deals only with the three identity theft convictions.

*Multiple convictions for identity theft proper.*

We deal here with the legal doctrine of multiplicity. Multiplicity is charging a single offense in more than one count of a complaint or information; it creates the potential for multiple punishments for a single offense, violating the Double Jeopardy Clause of the Fifth Amendment and § 10 of the Kansas Constitution Bill of Rights. See *State v. Harris*, 284 Kan. 560, 162 P.3d 28 (2007). Obviously this is a question of law subject to our unlimited review. See *State v. Schoonover*, 281 Kan. 453, 462, 133 P.3d 48 (2006).

When examining this issue, the Kansas Supreme Court has stated the overarching inquiry is whether the convictions are for the same offense. "There are two components to this inquiry, both of which must be met for these to be a double jeopardy violation: (1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one?" 281 Kan. at 496. We apply this test to the facts here.

*Schoonover* teaches us offenses committed separately and severally, at different times and different places, are factors that show an offense did not arise out of a single wrongful act. 281 Kan. at 496-97. Here, Green got the documents and information from his friend one day. He used the information to get a driver's license

with his picture on it. Then, over the next 2 days, used the information to get credit or try to get credit at three different retailers. Certainly Green's acts are separated by time, distance, and business establishments. We do not think the same conduct produced each conviction, rather each *use* of the stolen identity led to the convictions. The first part of the *Schoonover* test is not met here. We turn now to the idea of "unit of prosecution."

When a double jeopardy issue arises from convictions for multiple violations of a single statute, this court applies the unit of prosecution test. *Schoonover*, 281 Kan. at 471-72, 497-98. "In a unit of prosecution case, the court asks how the legislature has defined the scope of conduct composing one violation of the statute." *Harris*, 284 Kan. at 572. "Under this test, the statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution. There can be only one conviction for each allowable unit of prosecution." *Schoonover*, 281 Kan. at 497-98.

Each use of the victim's identity was unique, and one crime was an attempt to use the identity. K.S.A. 2004 Supp. 21-4018(a) states that identity theft "is knowingly and with intent to defraud for economic benefit, obtaining, possessing, transferring, using or attempting to obtain, possess, transfer or use, one or more identification documents or personal identification number of another person other than that issued lawfully for the use of the possessor." The statutory definition does not compel us to equate these three uses to one crime.

To the contrary, Green wants us to follow the reasoning used by another panel of our court in *State v. Meza*, 38 Kan. App. 2d 245, 165 P.3d 418 (2007). The *Meza* court dealt with the 2-year statute of limitations period of K.S.A. 2004 Supp. 21-3106(8) as applied to K.S.A. 2004 Supp. 21-4018(a). Meza, using another woman's social security card, got a job from a company in Fort Scott and worked there for about 4 years before her discovery. On appeal, Meza argued the statute of limitations began to run when she first used the other woman's social security card to get a different job in 1998. The *Meza* court used some vague testimony from a KBI agent to divine legislative intent for identity theft. The panel held:

"The very nature of identity theft involves more than the surreptitious acquisition of a victim's personal information. It includes the multitude of injurious acts which flow from the acquisition of that information." *Meza*, 38 Kan. App. 2d at 251. The panel decided it was a continuing crime and therefore Meza's prosecution was not time barred. 38 Kan. App. 2d at 251-52.

Green interprets *Meza* to mean the legislature intended for the unit of prosecution to encompass *all* conduct following the illegal obtaining of a person's identity information. We are not persuaded Green's interpretation is correct. In *Meza*, the innocent person's social security number was used once to get the job, but Meza continued to cash paychecks. Here, the identity was used at three places at different times, once at JCPenney, once at Home Depot, and once at Wal-Mart.

To judge this argument, two fundamental rules must be recalled and used. K.S.A. 2004 Supp. 21-3106(10) states an offense is committed when every statutory element occurs. That happened here. Every element was fulfilled three times on different days and different locations. A credit account was opened at two stores, and an application for credit was filled out for the third. Further, we must consider if there is a fresh impulse motivating some of the conduct. See *Schoonover*, 281 Kan. at 497. Obviously each new retail store gave a fresh impulse to Green to *use* Kane's identity. Green's acts did not occur at the same time or at the same location.

The second fundamental rule of law concerns statutory construction. We look first at the words of the law itself to decide its meaning. "The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. A statute should not be read to add language that is not found in it or to exclude language that is found in it. When a statute is plain and unambiguous, the court must give effect to the legislature's intent as expressed rather than determining what the law should or should not be. [Citation omitted.]" *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). Using this rule, the meaning of the legislature appears plain to us. Each time an innocent person's identity is intentionally used for some fraudulent purpose it is a crime. Each use of another person's identity is a

unit of prosecution for the crime of identity theft. To rule otherwise, we would have to rewrite the statute to eliminate the word "use".

This interpretation of the statute also makes sense to the person whose identity is taken. Each use of a stolen identity is a blow to the body of credit established by an innocent person. Every use of the innocent's identity takes something away from that person in this modern age of credit histories and instantaneous commercial transactions. If the legislature did not intend that, it would not have employed the verb "use."

*There was no need for a jury instruction about common scheme here.*

As an ancillary issue, Green contends the court should have given a jury instruction about common scheme evidence. He proposed an instruction telling the jury the evidence showed the crimes charged are part of a common scheme and that they could decide, based on the evidence, if there was a common scheme at work here. Offering no authority for such an instruction, the trial court denied Green's request.

Now Green argues this should have been a question of fact as well as a question of law. He contends the "same conduct" component is a question of fact, needing a jury determination, while the "unit of prosecution" component is a question of law, requiring a decision by a judge. Prior cases say no, this is a question of law for the court.

In *Schoonover*, the court noted the issue of whether the defendant's convictions arose from the same conduct was a question of law. 281 Kan. at 498. The *Schoonover* court relied on *State v. Kesselring*, 279 Kan. 671, 682, 112 P.3d 175 (2005), that held whether conduct constitutes multiple acts is a question of law. Since the determination of whether conduct constitutes multiple acts is a question of law, there was no reason to submit to the jury a "common scheme" jury instruction. We see no error here.

*The jury's findings of aggravating sentencing factors were substantial and compelling.*

After the jury's verdict, the penalty phase of the trial began. The State had moved for an increased sentence on four grounds. First, Green was not amenable to probation. Second, Green had a history of committing new offenses while on probation or parole. Third, Green posed a significant risk to the community. Fourth, Green had a history of fraud convictions that showed his repeated involvement in economic crimes, such as theft, fraudulent use of credit devices, and forgery.

In support of this motion, the State offered the testimony of several witnesses. Green's probation officer testified Green failed to comply with his probation terms within the first 6 months. Therefore, Green served the rest of his sentence in prison. Green's presentence investigation report revealed Green was on probation for a misdemeanor offense, on bond for a misdemeanor offense, and on bond for a separate felony offense when these crimes were committed. The arresting officer testified he found a house arrest bracelet on Green's ankle during his pat-down search. According to the officer, a house arrest bracelet "is a tracking device for subjects who have been released from prison." The officer noted Green was released 30 days before committing the current offenses.

The jury agreed that all four factors existed beyond a reasonable doubt. In turn, the sentencing court held the jury's findings were substantial and compelling. This resulted in a 106-month sentence.

In opposition to this increased sentence, Green argues the first and second factors found by the jury must be limited to dispositional departures. In other words, whether he was amenable to probation and had a history of committing crimes while on probation are relevant only to whether he should be placed on probation or imprisoned. Further, he asserts his risk to the community and his record of economic crimes, the third and fourth factors, are already included in the first factor and in his criminal history.

His argument does not persuade us. A sentencing court can rely on a jury's finding that a defendant is not amenable to probation

as a substantial and compelling reason to either increase the duration of a sentence or make a more restrictive disposition of a sentence or both. In *State v. Snow*, 282 Kan. 323, 345, 144 P.3d 729 (2006), the Kansas Supreme Court recognized that a defendant's nonamenability to probation can be a substantial and compelling reason to support both an upward *durational* departure sentence and an upward *dispositional* departure sentence; see also *State v. Yardley*, 267 Kan. 37, 43-44, 978 P.2d 886 (1999) (affirming district court's decision to grant State's motion for a durational departure sentence based on multiple factors, which included defendant's nonamenability to probation).

We need not address Green's remaining challenges to the aggravating factors because the presence of one factor is enough. In *State v. Ippert*, 268 Kan. 254, Syl. ¶ 2, 995 P.2d 858 (2000), the court said it is not required that all the reasons given by the sentencing court to support the departure sentence be substantial and compelling as long as one or more of the factors relied upon is substantial and compelling.

Green vainly tries to contend K.S.A. 21-4720(c) was unconstitutional here. He did not raise this issue before the trial court; therefore, he cannot bring the matter up for the first time on appeal. See *State v. Rojas*, 280 Kan. 931, 932, 127 P.3d 247 (2006). Besides, in *Snow*, 282 Kan. at 343, the court ruled K.S.A. 21-4720(c) is not applicable to a defendant's sentence when the district court departed based on aggravating factors found by a jury. That happened here; the jury unanimously made the factual findings that supported his increased sentence. It follows that Green lacks standing to challenge the constitutionality of K.S.A. 21-4720(c). See 282 Kan. at 343 (stating that "defendants . . . for whom a statute is constitutionally applied cannot challenge the constitutionality of the statute on the grounds that the statute may conceivably be applied unconstitutionally in circumstances other than those before the court").

*Green was not deprived of due process because the aggravating sentencing factors are not listed in the statute.*

Green challenges the sentencing court's use of aggravating factors not listed in K.S.A. 2004 Supp. 21-4716(c)(2). He asserts that his due process rights were violated when he was not warned these factors would enhance his sentence. Green asks us to hold that nonstatutory aggravating factors can never cause an increased sentence.

The trouble with Green's argument is the plain language of the statute clearly says the list contained in it is not exclusive. K.S.A. 2004 Supp. 21-4716(c)(2) states that it provides a "nonexclusive list of aggravating factors" for consideration. Second, the State timely gave specific notice to Green that it planned on using these factors as grounds to increase his sentence. The State cited these four aggravating factors in its motion for upward durational departure on November 23, 2004, and the trial over these aggravating factors did not occur until July 19, 2005. We see no error here.

*The criminal history of the defendant is not a jury question.*

Finally, Green argues that his Sixth and Fourteenth Amendment rights under the United States Constitution were violated when the trial court increased his sentence based on his criminal history. He contends that under *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), the sentencing court should have required his criminal history to be proved beyond a reasonable doubt to a jury.

Green admits the Kansas Supreme Court has previously rejected this argument in *State v. Ivory,* 273 Kan. 44, 41 P.3d 781 (2002), which stated that *Apprendi* does not apply where sentence was based on defendant's criminal history score. We see no sign that our Supreme Court intends to change its stance, and we are duty bound to follow its ruling. See *State v. Storey,* 37 Kan. App. 2d 555, 562, 154 P.3d 1148 (2007).

Affirmed.