(195 P.3d 282)
No. 98,549

STATE OF KANSAS, *Appellee*, v. RICHARD R. SNOW, *Appellant*.

Opinion filed November 14, 2008.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Phill Kline*, district attorney, and *Stephen N. Six*, attorney general, for appellee.

Before MALONE, P.J., ELLIOTT and MARQUARDT, JJ.

MALONE, J.: Richard R. Snow appeals his upward durational departure sentence. Snow was convicted by a jury of 15 felony counts of nonresidential burglary, theft, and criminal damage to property. The jury found aggravating factors supporting an upward durational departure, and the district court imposed a controlling sentence of 92 months' imprisonment. The Kansas Supreme Court affirmed Snow's convictions but remanded the case for resentencing because the total sentence exceeded the statutory maximum. *State v. Snow*, 282 Kan. 323, 342, 144 P.3d 729 (2006).

On remand, the district court again imposed a controlling sentence of 92 months' imprisonment, calculated in a manner different than the original sentence. In this appeal, Snow claims: (1) the Supreme Court lacked jurisdiction to remand the case for resentencing; (2) the district court's use of vague, nonstatutory aggravating factors to increase Snow's sentence violated his due process rights; and (3) the district court erred by considering nonamenability to probation as an aggravating factor to justify an upward durational departure.

The facts supporting Snow's convictions are not relevant to this sentencing appeal. In the earlier decision, our Supreme Court

summarized the procedural history surrounding Snow's initial sentencing:

"After the jury returned its verdict, the district court held a separate sentencing hearing for the jury to determine the existence of aggravating factors that could enhance Snow's sentence. The jury found beyond a reasonable doubt that Snow was not amenable to probation, posed a significant risk to the community, would more likely than not reoffend, and posed a risk of harm to the fact witnesses against him.

"At sentencing, the district court used one of Snow's nonresidential burglary convictions, a severity level 7 felony, as the primary crime for calculating Snow's sentence. Based on Snow's criminal history score of E, the district court determined that Snow's presumptive sentence for nonresidential burglary was probation. However, the district court noted that Snow was on probation when he committed the crimes in this case and applied the special rule in K.S.A. 2005 Supp. 21-4603d(f), which permits the district court to impose a prison sentence in a presumptive probation case without a dispositional departure when the crime was committed while the defendant was on probation. The district court then granted the State's motion for a durational departure, relying primarily on Snow's lack of amenability to probation as justification. The district judge issued Snow's sentence, stating:

'I will adopt a sentence on the underlying Count One, burglary charge, of 23 months, which is the maximum [presumptive] sentence allowed. The Court will make the remainder of the sentences the aggravated number as found in each of the sentencing grid boxes for the felony counts, and I will order that they be run consecutive.

'The court is denying probation as an effect both of granting the motion and of application of the Special Rule. The sentence will then on the felonies be the maximum that is allowed, which is 92 months.

'There are four misdemeanor charges on which a six-month sentence can be rendered. The Court will render the maximum six-month sentence on each of those and will provide that they too be consecutive to the underlying felony sentences.' " *Snow*, 282 Kan. at 327-28.

In his first appeal, Snow argued that pursuant to K.S.A. 21-4720(b)(4), his total sentence could not exceed twice his base sentence. Because Snow's base sentence was 23 months, he argued that his total sentence of 92 months was illegal. Our Supreme Court agreed and vacated Snow's sentence and remanded the case to the district court for resentencing. 282 Kan. at 342.

On remand, the district court reiterated its decision to grant an upward durational departure based upon the jury's findings that

Snow was not amenable to probation, that he posed a significant risk to the community, and that if granted probation, Snow would more likely than not reoffend. These constituted nonstatutory aggravating factors for departure. Applying the departure factors to the first count of nonresidential burglary, the district court doubled the presumptive sentence of 23 months, resulting in a base sentence of 46 months. For the remainder of the felony counts, the district court imposed the aggravated grid box term and ran the sentences consecutively, resulting in a total term of 174 months' imprisonment. Because Snow's total felony sentence could not exceed twice the base sentence, the district court imposed a controlling sentence on the felony counts of 92 months' imprisonment. Snow timely appeals.

## Jurisdiction

Snow first asks this court to rule that the Supreme Court lacked jurisdiction to remand his legal presumptive sentences for resentencing. Snow originally received a presumptive term of 23 months as his base sentence for nonresidential burglary. He also received the maximum presumptive sentence on the other felony counts to be served consecutively. In other words, Snow initially received a legal presumptive sentence on each individual count, but the total sentence was illegal because it exceeded the statutory maximum for consecutive sentences. According to Snow, even though his total sentence was illegal, the Supreme Court lacked jurisdiction to order resentencing of his otherwise legal presumptive sentences on the individual counts. Following Snow's logic, the district court should have left Snow's original sentence on each count in place and doubled the original base sentence of 23 months, resulting in a controlling sentence of 46 months' imprisonment.

Jurisdiction is an issue that may be raised for the first time on appeal. *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007). Whether jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *State v. Denney*, 283 Kan. 781, 787, 156 P.3d 1275 (2007). To the extent this issue requires interpretation of the Supreme Court's mandate and a determination of whether the district court complied with the man-

date, our review is also unlimited. *Edwards v. State*, 31 Kan. App. 2d 778, 780, 73 P.3d 772 (2003).

Arguably, the district court probably intended to impose a legal maximum sentence of 92 months' imprisonment at Snow's initial sentencing. After the jury found Snow guilty of the charges, the district court held a separate hearing on aggravating factors supporting the State's request for an upward durational departure. The jury found that multiple aggravating factors existed which were accepted by the district court. The district court noted that Snow's aggravated presumptive term on the base sentence for nonresidential burglary was 23 months. The district court could have doubled the base sentence to 46 months, which was the purpose of holding the departure hearing in the first place, but the district court failed to expressly do so. Because the district court imposed a base sentence of 23 months rather than 46 months, the Supreme Court concluded that the total sentence of 92 months was illegal. In its decision, however, the Supreme Court expressly stated that on remand the district court could resentence Snow on all counts and change the base sentence to reflect the aggravating durational departure factors:

"When a defendant is convicted on several counts, a single judgment should be pronounced declaring the full measure of punishment to be imposed for all of the offenses. [Citation omitted.] When the defendant's sentence violates the maximum consecutive sentence allowed by K.S.A. 2005 Supp. 21-4720, the district court can resentence the defendant for all counts and change the base sentence to reflect aggravated durational departure factors previously found to increase the total consecutive sentence pursuant to K.S.A. 2005 Supp. 21-4720. [Citation omitted.]" *Snow*, 282 Kan. at 342.

On remand, the district court did exactly what the Supreme Court signaled it could do. The district court doubled the base sentence to 46 months to reflect the upward durational departure factors and ordered consecutive sentences on each count. Because the total sentence could not exceed twice the base sentence pursuant to K.S.A. 21-4720(b)(4), the district court imposed a controlling sentence of 92 months' imprisonment. This resulted in the maximum legal sentence Snow could have received under the

"double-double" rule. See Kansas Sentencing Guidelines, Desk Reference Manual, pp. 48-49 (2007).

*State v. Baldwin*, 24 Kan. App. 2d 12, 941 P.2d 422 (1997), presents a similar factual situation. In *Baldwin*, the defendant pled no contest to four counts of aggravated assault on a law enforcement officer. Pursuant to the plea agreement, the district court initially imposed a sentence of 20 months for each count and ran three of the counts consecutively, for a controlling sentence of 60 months. The defendant filed a motion to correct an illegal sentence because his total sentence of 60 months exceeded twice his base sentence of 20 months. The district court agreed and proceeded to resentence the defendant. The district court increased the base sentence to 38 months based upon departure factors and reduced the sentences on the remaining three counts to 19 months. The district court ordered the first and second counts to run consecutively for a controlling sentence of 57 months. 24 Kan. App. 2d at 12-13.

The Court of Appeals affirmed. The court found that the initial controlling sentence of 60 months was illegal because it exceeded twice the base sentence, even though the defendant received a legal presumptive sentence on the individual counts. Under such circumstances, the court determined it was permissible to resentence the defendant by increasing his base sentence and changing his sentences on the remaining counts to arrive at a controlling sentence of 57 months. 24 Kan. App. 2d at 13-14.

Here, the district court followed the same procedure that was approved in *Baldwin*, and Snow's sentence directly comports with the Supreme Court's mandate. We conclude that when a defendant's controlling sentence in a multiple conviction case is found to be illegal because it exceeds the statutory maximum, the district court may resentence the defendant on each individual count. Snow's argument that the Supreme Court lacked jurisdiction to remand his case for resentencing is without merit.

### Use of nonstatutory aggravating factors

Next, Snow claims the district court erred by using nonstatutory aggravating factors as a basis for the upward durational departure.

Snow makes two separate arguments. First, Snow argues that the use of *any* nonstatutory aggravating factors to increase his sentence violated his constitutional due process rights. In the alternative, Snow argues that the specific nonstatutory aggravating factors used in his case were vague, which also violated his due process rights.

K.S.A. 21-4716(c)(2) provides a nonexclusive list of aggravating factors that may be considered in determining whether substantial and compelling reasons for departure exist. Interpretation of a sentencing statute is a question of law, and an appellate court's standard of review is unlimited. *State v. Ruiz-Reyes*, 285 Kan. 650, 653, 175 P.3d 849 (2008). Also, whether an individual's constitutional rights have been violated is a question of law, and an appellate court's review is unlimited. *McComb v. State*, 32 Kan. App. 2d 1037, 1041, 94 P.3d 715, *rev. denied* 278 Kan. 846 (2004).

Initially, the State maintains that Snow has not properly preserved this issue for appeal. Snow did not raise this issue prior to his original sentencing; he attempted to raise the issue for the first time in his original appeal. However, the Supreme Court declined to address the issue as Snow had not raised the issue in the district court. 282 Kan. at 343-44. On remand to the district court, Snow filed an objection specifically stating his constitutional argument. The district court imposed a departure sentence over that objection.

In this second appeal, the State argues that Snow is still procedurally barred from raising this issue under the law of the case doctrine because the issue was rejected by the Supreme Court in the first appeal. As Snow points out in his reply brief, however, the law of the case doctrine only applies "on all questions *addressed* in a first appeal." (Emphasis added.) *State v. Morton*, 283 Kan. 464, 472, 153 P.3d 532 (2007). Because the Supreme Court did not address the merits of this issue in the first appeal and Snow raised the issue on remand to the district court, Snow has properly preserved the issue for this appeal.

Snow first argues that the use of any nonstatutory aggravating factors to increase his sentence violated his due process rights. Snow premises his argument on the fact that all crimes in Kansas are statutory. See K.S.A. 21-3102(1). Under the Due Process

Clause of the Fifth and Fourteenth Amendments to the United States Constitution, a state must give fair warning of proscribed conduct before imposing criminal sanctions. Snow argues that a statutory scheme that allows increased prison sentences based on nonstatutory aggravating factors does not provide fair warning and violates the Due Process Clause.

K.S.A. 21-3102(1) provides that no conduct shall constitute a crime against the state unless it is made criminal in the Kansas Criminal Code. Here, there is no question that Snow had fair warning of his proscribed conduct as the Kansas Criminal Code expressly prohibits burglary (K.S.A. 21-3715), theft (K.S.A. 21-3701), and criminal damage to property (K.S.A. 21-3720). However, Snow argues that the criminal code's nonexclusive list of aggravating factors for a departure does not provide fair warning of his possible sentence because it permits an increased sentence based on factors not explicitly included in the criminal code.

Kansas appellate courts have consistently held that sentencing courts may use nonstatutory aggravating factors as the basis for departure as long as they are supported by the evidence and consistent with the intent and purposes of the Kansas Sentencing Guidelines. *State v. Rodriguez*, 269 Kan. 633, 646, 8 P.3d 712 (2000); *State v. Tiffany*, 267 Kan. 495, Syl. ¶ 8, 986 P.2d 1064 (1999); *State v. Benoit*, 31 Kan. App. 2d 591, 593, 97 P.3d 497 (2003).

Furthermore, this court has specifically rejected Snow's due process argument in *State v. Green*, 38 Kan. App. 2d 781, 172 P.3d 1213 (2007). In *Green*, the defendant argued that his due process rights were violated when he was not warned that his sentence could be enhanced based on nonstatutory aggravating factors. This court rejected the argument and stated:

"The trouble with Green's argument is the plain language of the statute clearly says the list contained in it is not exclusive. K.S.A. 2004 Supp. 21-4716(c)(2) states that it provides a 'nonexclusive list of aggravating factors' for consideration. Second, the State timely gave specific notice to Green that it planned on using these factors as grounds to increase his sentence. The State cited these four aggravating factors in its motion for upward durational departure on November 23, 2004, and the trial over these aggravating factors did not occur until July 19, 2005. We see no error here." 38 Kan. App. 2d at 790.

We agree with the court's analysis in *Green*. K.S.A. 21-4716(c)(2) states that it provides a "nonexclusive list of aggravating factors" for consideration. Thus, Snow had statutory notice prior to his criminal conduct that his sentence could be enhanced based upon unspecified aggravating factors. Also, the State filed a notice with the district court which specified the nonstatutory aggravating factors it intended to rely on to seek a departure sentence well before Snow's jury trial was held. Thus, Snow received fair warning of the departure factors used to increase his sentence.

We also note that under the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3591 *et seq.* (2006), nonstatutory aggravating factors may be considered by a court or a jury in order to impose the death penalty. The FDPA enumerates 16 statutory aggravating factors to support the death penalty but also provides that the jury or the court "may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c) (2006). Under the FDPA, the government must prove the existence of at least one statutory aggravating factor in order for the jury to consider recommending a sentence of death. 18 U.S.C. § 3593(e) (2006). Once this threshold is met, however, the jury is allowed to weigh all aggravating factors against all mitigating factors to determine if the death penalty should be imposed. The federal courts have consistently upheld the constitutionality of the use of nonstatutory aggravating factors to impose the death penalty under the FDPA. See, *e.g.*, *United States v. Cheever*, 423 F. Supp. 2d 1181, 1204-07 (D. Kan. 2006).

If the Constitution permits the use of nonstatutory aggravating factors to impose the death penalty under the FDPA, it would seem that the Kansas statutory scheme for considering nonstatutory aggravating factors to impose a departure sentence is also constitutional. We conclude that the district court's use of nonstatutory aggravating factors to increase Snow's sentence did not violate his constitutional due process rights.

In the alternative, Snow argues that the specific nonstatutory aggravating factors used in his case were vague. Snow's upward durational departure sentence was based on the jury's findings that Snow was not amenable to probation, that he posed a significant

risk to the community, and that if granted probation, Snow would more likely than not reoffend. Snow specifically faults the district court for failing to define the key terms "amenable," "probation," "significant risk," and "community."

We disagree. The aggravating factors the district court used to increase Snow's sentence were not so vague as to offend due process. At the hearing for the jury to determine the existence of aggravating factors, the State called as witnesses a probation officer and two of Snow's victims. The victims testified about the significant impact Snow's crimes had on their respective businesses. The probation officer described the available probation options in Johnson County and the different types of reporting requirements for each level of supervision. This testimony was relevant to the alleged aggravating factors the district court submitted to the jury for consideration, and in the context of the evidence, the key terms were not vague. The aggravating factors employed words and phrases commonly understood by a jury, and the district court did not need to define such terms. See *State v. Phelps*, 28 Kan. App. 2d 690, 695, 20 P.3d 731, *rev. denied* 271 Kan. 1041 (2001) (district court need not define words or phrases that are commonly understood). We reject Snow's argument that the aggravating sentencing factors used in his particular case were vague.

### Nonamenability to probation

Finally, Snow argues that nonamenability to probation should not be used as an aggravating factor to impose an upward durational departure. While Snow concedes that nonamenability to probation is an appropriate factor to justify a dispositional departure, Snow maintains there is no rational link between nonamenability to probation and an upward durational departure.

An appellate court's review of a departure sentence is limited to whether the sentencing court's findings of fact and reasons justifying a departure (1) are supported by the evidence in the record and (2) constitute substantial and compelling reasons for departure. K.S.A. 21-4721(d). Snow does not challenge the sufficiency of the evidence to support the jury's finding that he was not amenable to probation. Rather, he argues that this factor does not con-

stitute a substantial and compelling reason for a durational departure. Whether the factors relied upon by the sentencing court constitute substantial and compelling reasons for departure is a question of law. *State v. Martin*, 285 Kan. 735, Syl. ¶ 3, 175 P.3d 832 (2008).

We first note that the Kansas Supreme Court has specifically held that nonamenability to probation may constitute a substantial and compelling reason for an upward *durational* departure, as well as a substantial and compelling reason for a dispositional departure. *Snow*, 282 Kan. at 345; *State v. Yardley*, 267 Kan. 37, 43-44, 978 P.2d 886 (1999). This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005).

Furthermore, even if we were to find merit in Snow's argument, we note that the presence of one aggravating factor is sufficient to support an upward durational departure. It is not required that all the reasons given for departure by the sentencing court support the departure; as long as one or more of the factors relied upon by the sentencing court is substantial and compelling, the departure sentence will be affirmed. *State v. Ippert*, 268 Kan. 254, Syl. ¶ 2, 995 P.2d 858 (2000). Here, although the district court stated that nonamenability to probation by itself would be sufficient to support Snow's upward durational departure, the district court stated that additional factors, including that Snow posed a significant risk to the community and that Snow would more likely than not reoffend, also supported a departure sentence. Snow does not argue that these additional factors do not constitute substantial and compelling reasons to depart. Accordingly, we find that Snow's departure sentence should be upheld.

Affirmed.