NOT DESIGNATED FOR PUBLICATION

No. 113,237

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUAN LUIS JASSO-MENDOZA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed May 12, 2017. Reversed and remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE and GARDNER, JJ.

*Per Curiam*: A combination of three errors in this identity theft prosecution resulted in Juan Luis Jasso-Mendoza not receiving a fair trial. First, the court gave the jury confusing instructions on what intent had to be proved. Second, by merely telling the jury to reread the instructions, the judge failed to adequately answer the jury's question about those confusing instructions. Third, the prosecutor misled the jury by eliminating the statutory requirement to prove "intent to defraud" when he argued to the jury that Jasso-Mendoza could be found guilty by simply using someone else's social security

1

number. It was this intent that the jury had asked about. When we add these errors together, we must reverse. Jasso-Mendoza must receive a new trial.

*Jasso-Mendoza works as a meat cutter.*

Right out of high school, Jasso-Mendoza started working as a meat cutter at a small Johnson County shop in November 2009 until his arrest by a federal agent in May 2012. He was a very good worker and about a year after he was hired, he was promoted to manager.

When Jasso-Mendoza was 7 years old, he and his mother, brother, and sister moved to the United States. His father had been working in Kansas for 3 years before that. When he was 14 or 15, Jasso-Mendoza asked his father for a bicycle or a video game. His father told him that if he wanted something, he should work for it. Jasso-Mendoza brought home a job application for work at Back Yard Burgers. His father, in turn, gave him a social security card and permanent resident card. He testified that his father told him he was a permanent resident of the United States and provided no warning about using the documents. Jasso-Mendoza believed his father. Just before and during high school, he worked for Back Yard Burgers, Red Robin Gourmet Burgers, and Ricco's Italian Bistro. He had no problems using the identification documents. While he was in high school, his parents separated and he lost contact with his father.

The social security number, however, was legally assigned to Anthony Chung, born in 1944.

The State charged Jasso-Mendoza with making a false information for the W-4 form and job application he filled out when he applied for work. The second charge was identity theft for using Chung's social security number.

The trial court gave several intent instructions. During deliberations, the jury asked: "A question exists as to intent under Count II. If the defendant intended to use the personal identifying information for his benefit, is that sufficient regardless [of] whether he knew it belonged to someone else[?]" In response, the trial court told the jury to read the instructions as a whole.

The jury could not reach a verdict on the first count—making a false information. The jury found Jasso-Mendoza guilty on the identity theft count. The court sentenced him to 7 months in prison, which was suspended, 18 months' probation, and 12 months' postrelease supervision.

In this appeal, Jasso-Mendoza raises five issues:

- The court failed to properly answer the jury question;
- the district attorney misstated the law in closing argument;
- Jasso-Mendoza used the identity in 2009 when he got the job, not 2012; therefore, there is no evidence at trial that he used it after July 1, 2011;
- the Kansas' identity theft law is void for vagueness;
- federal law, namely the Immigration Reform and Control Act of 1996, preempts our state criminal statutes.

The last three issues have all been answered in other cases in a way that is contrary to his position. Because we agree with the prior holdings on the last three issues, we will deal with them in a summary fashion, simply reiterating the prior rulings that adequately control those issues. We will concentrate our efforts on the first two issues by examining the law of identity theft and the jury instructions the court gave.

3

*There are currently six ways to commit the crime of identity theft in Kansas.*

After the 2010 amendments to the statute, in a prosecution under K.S.A. 2011 Supp. 21-6107(a), the State must prove:

1.      The defendant (obtained) (possessed) (transferred) (used) (sold) (purchased) any personal identifying information or document containing personal identifying information belonging to or issued to another person.

2.      The defendant did so with the intent to defraud and in order to receive a benefit.

See PIK Crim. 4th 61.050.

In other words, the statute lists six verbs that if done with an intent to defraud and in order to receive a benefit, then an offender can be found guilty of identity theft. Here, the State alleged that Jasso-Mendoza "used" the personal identifying information—Chung's social security number—with the intent to defraud and in order to receive a benefit.

We mentioned the 2010 amendments to the crime of identity theft because prior to April 15, 2010, the State was required to prove that all of these actions were done "knowingly." This is pertinent to the issue dealing with whether identity theft is a continuing crime.

*The jury was instructed in a confusing way.*

The jury had originally been given several instructions dealing with the culpable mental state the State needed to prove for identity theft under Count II. Even the trial

4

court admitted the instructions were "difficult to sort through." The series begins with instruction No. 12 and ends with instruction No. 15.

The trial court first instructed the jury in instruction No. 12 that "the State must prove that the defendant committed the crime of identity theft intentionally. A defendant acts intentionally when it is the defendant's desire or conscious objective to do to [*sic*] the act or cause the result complained about by the State."

Next, in instruction No. 13, the court listed the elements of identity theft:

"To establish this charge, each of the following claims must be proved:

"1.     The defendant used any personal identifying information or document containing personal identifying information belonging to or issued to another person.
"2.     The defendant did so with the intent to defraud that person or anyone else, and in order to receive a benefit.
"3.     This act occurred on or about the 1st day of July 2011, through the 16th day of May, 2012, in Johnson County, Kansas."

This instruction was based on PIK Crim. 4th 61.050.

Then, in instruction No. 14, the court defined intent to defraud: "'Intent to defraud' means an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." This definition is found in K.S.A. 2011 Supp. 21-5111(o).

5

Finally, in instruction No. 15, the court told the jury: "It is not a defense to the charge of identity theft that the defendant did not know that such personal identifying information belongs to another person, or that the person to whom such personal identifying information belongs or was issued is deceased." This instruction is an excerpt from K.S.A. 2011 Supp. 21-6107(d). We acknowledge that this is a correct statement of the law.

After reading these instructions, a rational juror can see the problem immediately. How do we reconcile the section of instruction No. 13 that says the defendant must use the identity information "with the intent to defraud that person" and the portion of instruction No. 15 that states: "It is not a defense to the charge of identity theft that the defendant did not know that such personal identifying information belongs to another person"? In other words, how can a defendant intend to defraud if he did not know the identity information belonged to someone else? Faced with this conundrum, the jury asked for clarification from the court.

The jury asked: "A question exists as to intent under Count II. If the defendant *intended to use* the personal identifying information for his benefit, *is that sufficient* regardless [of] whether he knew it belonged to someone else[?]" (Emphasis added.) The judge responded with the command to reread the instructions that confused the jury in the first place. The judge offered the jury no guidance. Under the circumstances of this case, such a response was inadequate and misleading.

"Where the jury is 'obviously confused' on a point of *law*, the court has an obligation to provide further instruction, even if the original jury instruction would normally have been sufficient." *State v. Stieben*, 292 Kan. 533, 536, 256 P.3d 796 (2011).

The obvious answer to the question is: "No. The State must prove the defendant used the identity information with the intent to defraud." It would have been better if the

6

judge had merely told the jury to reread instruction No. 13—the elements instruction. At least that would have offered the jury some guidance. Instead, an admonition to reread the instructions as a whole did not clear the air.

Looking closer, we doubt if instruction No. 12 needed to be given at all. K.S.A. 21-5202(f) provides that if a definition of a crime describes a culpable mental state that is sufficient for a commission of a crime, without distinguishing among the material elements thereof, such provision *shall apply to all the material elements of the crime*, unless a contrary purpose plainly appears.

The identity theft statute lists: obtained, possessed, transferred, used, sold, and purchased, which constitute the crime of identity theft if the acts are done with the intent to defraud. An intent to defraud is a culpable mental state.

For this reason, we disagree with dicta found in a recent opinion by a panel of this court in *State v. Saldana*, No. 111,429, 2015 WL 4486779, at *7 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. 1021 (2016), that concludes the identity theft statute no longer requires a culpable mental state:

> "[T]he amendments further clarified that a defendant no longer needs to know that he or she was using another person's personal identifying information. Those amendments clearly demonstrate that the legislature intended to eliminate any culpable mental state associated with 'obtaining, possessing, transferring, using, selling or purchasing any personal identifying information, or document containing the same, belonging to or issued to another person.'"

In our view, it is more accurate to say that the 2011 amendments to the identity theft statute place emphasis on the fact that the State must prove the intent to defraud, *which is a culpable mental state*. The standard is whether the defendant had an "intent to defraud," not an "intent to use" the personal identifying information of another person.

7

With no need to prove an "intent to use," the necessity to give instruction No. 12 is gone. The elements instruction alone provides proper guidance for the jury on this point.

*The prosecutor's comments increase the confusion.*

Our concern for the judge's lack of an answer to the jury increases when we consider it along with the argument made by the prosecutor. In closing argument, defense counsel argued that Jasso-Mendoza did not intend to defraud anyone. "Our argument's always been he thought it was his number, and because he thought it was his number he didn't have an intent to deceive."

In response, after reading instruction No. 15 to the jury, the prosecutor said, "The bottom line, though is he used Anthony Chung's social security number to get a job . . . . It is not a defense that he didn't know it belonged to somebody else. He had it." No objection to the statement was lodged.

Jasso-Mendoza now contends that the prosecutor, in essence, argued it was sufficient for the State to prove that simply *he had the number and used it*. By doing so, the prosecutor turned identity theft into an absolute liability crime and voided the intent to defraud element. If so, this is a clear misstatement of the law.

Jasso-Mendoza relies upon *State v. Hall*, 292 Kan. 841, Syl. ¶ 7, 257 P.3d 272 (2011), as support. In that case, our Supreme Court stated that a defendant can be denied a fair trial when the prosecutor misstates the law and the facts are such that the jury could have been confused or misled by the statement. The *Hall* court did find error due to the district attorney arguing that a person could form premeditation after pulling the trigger (the defendant shot the victim 4 times) as a misstatement of the law of premeditation. But the error was not reversible because the jury was properly instructed and the evidence of guilt was overwhelming. 292 Kan. at 852, 856.

8

A more illustrative case is *State v. Bunyard*, 281 Kan. 392, 404-08, 133 P.3d 14 (2006), *disapproved on other grounds by State v. Flynn*, 299 Kan. 1052, 329 P.3d 429 (2014), where the Supreme Court reversed the panel that had ruled it was harmless error of the oft repeated closing argument of the district attorney saying the force of the defendant's penis entering the victim's vagina was sufficient to prove the "overcome by force or fear" element in a rape prosecution. It was a gross and flagrant misstatement of the law.

When we consider the prosecutor's argument to the jury that "[Jasso-Mendoza] used Anthony Chung's number . . . . It is not a defense he didn't know it belonged to someone else. He had it," it is clear there is no mention that the State was required to prove an intent to defraud. Essentially, the prosecutor answered the jury's question by arguing that by proving Jasso-Mendoza had the social security number and used it, there was sufficient evidence to prove him guilty. That argument is incorrect because it ignores an essential element of the crime that the State was required to prove. The comment misled the jury. For these errors, we must reverse. We move now to the three remaining arguments that we summarily reject.

*Did Jasso-Mendoza use the identity information in 2011 after he got the job in 2009?*

Jasso-Mendoza contends that the use of the social security number was a discrete act that was completed in 2009 when he was hired. In his view, there is no evidence to support the commission of identity theft on or after July 1, 2011. In opposition, the State contends that Jasso-Mendoza not only used the social security number to become employed in 2009, but he used that identity information continuously in order to maintain his employment until his arrest in 2012.

When the sufficiency of evidence is challenged in a criminal case, we review all the evidence in the light most favorable to the State. We will uphold a conviction if we

9

are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

The nature of the crime is important in resolving this question. Is identity theft a single act or a course of conduct? The circumstances of each case provides the answer to the question. In *State v. Meza*, 38 Kan. App. 2d 245, 250-52, 165 P.3d 298 (2007), our court considered whether identity theft was a single, isolated act or an entire course of conduct. In 1998, Meza obtained employment by using the name and documents of Nyssa Davila. Meza was prosecuted for identity theft in 2004. The issue in *Meza* was whether the statute of limitations prohibited the State's prosecution of identity theft. The court noted that traditional theft is not considered a continuing offense, but that identity theft was not a "garden-variety" theft. "The very nature of identity theft involves more than the surreptitious acquisition of a victim's personal information. It includes the multitude of injurious acts which flow from the acquisition of that information." 38 Kan. App. 2d at 251. The court concluded that Meza misrepresented her identity every payday when she accepted, endorsed, and cashed a paycheck made out to Nyssa Davila. Thus, the court held identity theft in that case constituted a continuing course of criminal conduct. 38 Kan. App. 2d at 252.

Dealing with a similar issue, our court in *State v. Green*, 38 Kan. App. 2d 781, 784-87, 172 P.3d 1213 (2007), considered whether Green's three convictions for identity theft were for the same crime. Green used another person's identity at three different retailers over a 2-day period. The *Green* panel held that there were three uses of another person's identity, and thus three separate crimes. The court rejected the defendant's contention that all conduct following the illegal acquisition of a person's identity constituted one continuing crime. The panel distinguished *Meza*: "In *Meza*, the innocent

10

person's social security number was used once to get the job, but Meza continued to cash paychecks. Here, the identity was used at three places at different times, once at JCPenney, once at Home Depot, and once at Wal-Mart." *Green*, 38 Kan. App. 2d at 786.

"Each time an innocent person's identity is intentionally used for some fraudulent purpose it is a crime. Each use of another person's identity is a unit of prosecution for the crime of identity theft. To rule otherwise, we would have to rewrite the statute to eliminate the word 'use.'

" . . . Each use of a stolen identity is a blow to the body of credit established by an innocent person. Every use of the innocent's identity takes something away from that person in this modern age of credit histories and instantaneous commercial transactions. If the legislature did not intend that, it would not have employed the verb 'use.'" *Green*, 38 Kan. App. 2d at 786-87.

More recently, in *State v. Valdiviezo-Martinez*, No. 111,447, 2015 WL 7693673, at *3-4 (Kan. App. 2015) (unpublished opinion), *rev. granted* 305 Kan. ___ (December 15, 2016), a panel of this court agreed with the *Meza* court that identity theft was a continuing offense. Valdiviezo-Martinez was charged with committing identity theft in 2012. He argued the prosecution was barred by the statute of limitations because his crime was actually committed in 2005 when he first obtained employment. The court found there was sufficient evidence for the jury to find that Valdiviezo-Martinez' course of conduct continued into 2012:

"Essentially, even though Valdiviezo-Martinez first used the social security number in 2005, he continued to misrepresent his identity from 2005 to 2012. Every payday, Valdiviezo-Martinez accepted a paycheck he was not entitled to because he would not have been hired had he not used a social security number that did not belong to him." 2015 WL 7693673, at *3.

We must point out that the dissent in *Valdiviezo-Martinez* contended the defendant's "use" was not a continuous act. The dissent distinguished "use" and "possession." 2015 WL 7693673, at *6 (Atcheson, J., dissenting). "Use of the information

11

is a discrete violation; possession of the information is a continuing one." 2015 WL 7693673, at *7.

> "Valdiviezo used the social security number when he provided it to his employer to secure his job. He did so with the intent to defraud the employer and to obtain a benefit in the form of pay. The elements of the crime were complete, and the limitations period began to run. That form of identity theft is not a continuing violation." 2015 WL 7693673, at *8 (Atcheson, J., dissenting).

The dissent noted that the employer's issuance of paychecks did not require Valdiviezo to again present his social security number to his employer. 2015 WL 7693673, at *9. Our Supreme Court has granted review of this issue.

For our purposes, Jasso-Mendoza did not assert a statute of limitations defense. Rather, the State chose to charge him with identity theft occurring on or about July 1, 2011, to May 16, 2012, in order to take advantage of the change in law. Instruction No. 15, which we previously mentioned, does not reflect the law in effect when Jasso-Mendoza was first hired.

The evidence was sparse on whether Jasso-Mendoza "used" the social security number after October 30, 2009. The shop owner testified that on October 30, 2009, Jasso-Mendoza used the social security number on an employment application and W-4 form and gave him a social security card. The owner testified he could not have hired Jasso-Mendoza without the social security number. When he was asked if Jasso-Mendoza used the social security number to identify himself during the entirety of his employment, the owner said "yes."

There was also general testimony about how the government tracks earnings of individuals by social security number for purposes of social security and disability benefits, which can hurt or benefit the person to whom the social security number

12

belongs. There was, however, no indication there were any consequences for Anthony Chung in this case.

On this point, we find the holding in *Saldana*, 2015 WL 4486779, at *5-6, more pertinent. The *Saldana* panel, in response to an argument similar to the one made here, held:

> "To accept her wages, Saldana had to use a social security number; otherwise, [Crowne Plaza Hotel] could not pay her. Also, every time that she accepted wages, Saldana reaffirmed that this was her social security number and that she was entitled to those wages under that social security number." 2015 WL 4486779, at *6.

Based on this reasoning, the panel ruled that there was sufficient evidence in the record to show that the crime was committed. 2015 WL 4486779, at *6. We see no difference between the facts in *Saldana* and the facts here. Each time Jasso-Mendoza accepted wages, he was reaffirming that the social security number was his. Thus, there was sufficient evidence to show that Jasso-Mendoza used the identity after July 1, 2011.

Because of the way that earned wages are linked to a person's social security number, the argument that a person continuously uses a social security identity during the course of employment is a compelling argument. We reject Jasso-Mendoza's argument on this.

*Is the Kansas identity theft statute unconstitutionally vague?*

Jasso-Mendoza argues that the identity theft statute does not give fair warning of what conduct is prohibited and invites arbitrary and discriminatory enforcement, which is what occurred in his case. In other words, he contends the identity theft statute is unconstitutionally vague because it is contradictory. He refers to the statutory

13

requirement that there must be an intent to defraud, but the law also states that it is not a defense that the defendant did not know the information belongs to another person.

The State argues that the claimed conflicting statutory language can be reconciled. It claims that K.S.A. 2011 Supp. 21-6107(d) clarifies that the statute applies even if a defendant put together a random assortment of numbers to create a social security number but did not know the number belonged to a real person.

Traditionally, the test to determine whether a criminal statute is unconstitutionally vague involves answering two questions:

- Whether the statute gives fair warning to those potentially subjected to it; and
- Whether it adequately guards against arbitrary and unreasonable enforcement.

It has been said that at its heart, the test for vagueness is a commonsense determination of fundamental fairness. *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015).

The constitutionality of a statute is a question of law subject to unlimited review. Appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127, *cert. denied* 137 S. Ct. 226 (2016).

Several panels of this court have already ruled that the identity theft statute is not unconstitutionally vague on its face, though they have not considered Jasso-Mendoza's precise argument. This issue has been granted review by our Supreme Court. *Valdiviezo-Martinez*, 2015 WL 7693673, at *5-6; *State v. Dillard*, No. 111,123, 2015 WL 2414317,

at *5 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1079 (2016); *State v. Bland*, No. 108,272, 2014 WL 1362644 (Kan. App. 2014) (unpublished opinion).

The *Bland* panel held that

"K.S.A. 2010 Supp. 21-4018(a) is not so vague as to cause citizens to guess at its meaning or to result in fundamental unfairness: it forbids using another person's identity to deceive someone with the intent to defraud anyone in order to receive a benefit related to some legal right, obligation, or power. The identity-theft statute provides sufficient guidance for anyone who reads it." 2014 WL 1362644, at *4.

The *Valdiviezo-Martinez* panel found that the identity theft statute consists of commonly used words that an average person would recognize and know. 2015 WL 7693673, at *5. The panel held that the statute was not unconstitutionally vague only "because marginal cases could be put where doubts might arise." 2015 WL 7693673, at *5 (quoting *In Re Brooks*, 228 Kan. 541, Syl. ¶ 8, 618 P.2d 814 [1980]).

K.S.A. 2011 Supp. 21-6107 reads:

"(a) Identity theft is obtaining, possessing, transferring, using, selling or purchasing any personal identifying information, or document containing the same, belonging to or issued to another person, with the intent to defraud that person, or anyone else, in order to receive any benefit.

. . . .

"(d) It is not a defense that the person did not know that such personal identifying information belongs to another person, or that the person to whom such personal identifying information belongs or was issued is deceased."

We do not find the statute to be contradictory. A person can show an intent to defraud by using a social security number that the person knows does not belong to himself or herself, even if the person does not know that the number belongs to a real

15

person or that it belongs to a deceased person. The statute gives fair warning that such conduct is prohibited. But a person that actually believes the social security number was his or her own cannot have an intent to defraud by using the number.

The statute does not lend itself to arbitrary and discriminatory enforcement. "Intent to defraud" is still an element that must be proved. Therefore, the statute itself is not unconstitutionally vague. The apparent confusion in this case stemmed from the prosecutor's statements in closing argument and the court's jury instructions.

*Does federal law preempt Jasso-Mendoza's prosecution?*

Jasso-Mendoza contends that the State's prosecution of him for providing another person's social security number to his employer was preempted by the federal Immigration Reform and Control Act of 1986. He cites *Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492, 183 L. Ed. 2d 351 (2012). In *Arizona*, the United States Supreme Court held that an Arizona statute which made it a misdemeanor for an unauthorized alien to apply for or perform work in Arizona was preempted by that Act. 567 U.S. at 406-07.

This, of course, is a question of law. *State ex rel. Kline v. Transmasters Towing*, 38 Kan. App. 2d 537, Syl. ¶ 2, 168 P.3d 60, *rev. denied* 285 Kan. 1175 (2007).

There is an order of authority at work here. The Supremacy Clause to the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land; . . . [the] Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, state laws that interfere with, or are contrary to, federal law are unenforceable. See *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 294, 255 P.3d 1186 (2011). This court looks to "'the language of the pre-emption statute and the "statutory framework" surrounding it.'" *Wichita Terminal*

16

*Ass'n v. F.Y.G. Investments, Inc.*, 48 Kan. App. 2d 1071, 1078, 305 P.3d 13 (2013) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86, 116 S. Ct. 2240, 135 L. Ed. 2d 700 [1996]).

The Immigration Reform Control Act makes it unlawful to use any "form designated or established by the Attorney General under this subsection and any information contained in or appended to such form . . . for purposes other than for enforcement of [specified federal laws]." 8 U.S.C. §1324a(b)(5) (2012). Accordingly, the Act "prohibits a state from prosecuting a defendant for putting false information on an I-9 or other federal employment eligibility form." *State v. Lopez-Navarrete*, No. 111,190, 2014 WL 7566851, at *3 (Kan. App. 2014) (unpublished opinion).

Several panels of this court have concluded that the Act does not preempt the prosecution of undocumented workers for using another person's social security number to obtain employment under the Kansas identity theft statute. See, *e.g.*, *State v. Garcia*, No. 112,502, 2016 WL 368054, at *3-5 (Kan. App. 2016) (unpublished opinion), *rev. granted* 305 Kan. ___ (October 21, 2016); *State v. Morales*, No. 111,904, 2016 WL 97848, at *3-5 (Kan. App. 2016) (unpublished opinion), *rev. granted* 305 Kan. ___ (October 21, 2016). This issue has been granted review by our Supreme Court.

In *State v. Ochoa-Lara*, 52 Kan. App. 2d 86, 362 P.3d 606 (2015), *rev. granted* 305 Kan. ___ (October 21, 2016), our court conducted a comprehensive analysis and concluded:

"The State's prosecution of Ochoa-Lara for the illegal use of another's Social Security number did not depend on his immigration status, the lawfulness of his presence in the United States, or his eligibility for employment. The other panels of our court noted in those decisions, as we do here, that the possible illegal uses of another's Social Security number are myriad. There is nothing in the IRCA that suggests that Congress intended the comprehensive preemption of the police powers of the State to prosecute all such

17

instances of identity theft. The State's prosecution of Ochoa-Lara for violations of Kansas identity theft statutes was not preempted by the IRCA." 52 Kan. App. 2d at 93-94.

We agree with the reasoning employed by the panels in making their holdings on this point. We see no reason to depart from these decisions unless our Supreme Court decides otherwise. Federal law does not preempt the State's prosecution of Jasso-Mendoza.

*Why we reverse.*

It is the combination of errors in this prosecution that leads us to conclude that Jasso-Mendoza did not receive a fair trial. The confusing jury instructions, the judge's failure to answer the jury's question, and the prosecutor's misstatement of the law, when combined, all create an error that we cannot label as harmless. We must reverse and remand for a new trial.

Reversed and remanded for further proceedings.